9 w 451
156  641

# Croft *against* Moore.

One of three joint sureties, who paid the debt to their common creditor, may be subrogated to the rights of that creditor in the judgment paid by him, to enable him to recover contribution from the other two.

ERROR to the common pleas of *Cumberland* county.

John Moore against George Croft.   This was a question of substitution, arising out of the following facts :

On the 14th of May 1830, John D. Mahan executed a promissory note to George Croft, Samuel Galbraith and John Moore, for the payment of 900 dollars in four months, who endorsed it to the Harrisburg Bank, by whom it was discounted.   A suit was brought upon this note against them, and judgment obtained in 1831.   An execution was issued and the money was paid to the sheriff by John Moore and Samuel Galbraith.   After the payment of it, John Moore obtained a rule upon George Croft, to show cause why he

should not be substituted as plaintiff to the amount of the one-sixth part of the judgment which he paid for him.

This was resisted by George Croft on two grounds:—first, that substitution was not a proper remedy as between sureties, but only as between principal and surety; and secondly, that in consequence of the relation which existed between John Moore and John D. Mahan, the principal, as partners, the former had not such an equity as entitled him to substitution. The facts appeared to be, that after the note was discounted by the bank, the proceeds were paid to John Moore upon the check of Croft, Galbraith and Moore, the endorsers: that John D. Mahan, Jacob M. Haldeman and John Moore, were partners in the iron business at the time, and that the proceeds of the note were placed to the credit of John D. Mahan, upon his stock account, he being deficient in the amount which he had agreed to bring into the partnership.

*Hepburn*, president.—"The facts, so far as we are capable of understanding them in the present application, makes it the ordinary one of a joint surety, having paid the debt to their common creditor, asking to be subrogated to the rights of that creditor in the judgment paid by him against his co-surety, who paid nothing That he has such right, is, I think, clearly settled in the case of Cayler *v.* Ensworth, 6 *Page* 32; *Amer. Jur.* No. 41, p. 192.

"Joint sureties are bound, as between themselves, to contribute equally to discharge the debt for which they are jointly holden; and if one of them pays the whole, he is in equity subrogated to all the rights and remedies of the original creditor for the payment of his debt, not only as against the principal debtor, but also as against the co-sureties, to the extent they are equitably bound to contribute." Nothing more is asked for here, and we think the rule should be made absolute.

*Biddle* and *Watts*, for plaintiff in error. This is the first time in Pennsylvania that an attempt has been made to introduce the practice of substituting one surety against another, or one principal against another, to compel contribution; and we think the practical operation of it will meet with so many difficulties, growing out of the number of sureties, and their solvency and insolvency, that the parties had better be left to their action for contribution. 1 *Johns. Chan.* 469; 1 *Law Lib.* 143, 266; *Penn. Rep.* 361; 3 *Penn. Rep.* 405; *Fell on Cov.* 199; 2 *Vez.* 540.

*Graham* and *Alexander*, for defendant in error, cited 5 *Watts* 220; 1 *Johns. Chan.* 409; 1 *Atk.* 134; 4 *Johns. Chan.* 545; 1 *Penn. Rep.* 395; 6 *Page* 32.

The opinion of the court was delivered by

GIBSON, C. J.—As a remedy between surety and principal, or between sureties themselves, subrogation to the ownership of the

[Croft v. Moore.]

security has advantages which must always incline courts of equity to favour it.  As each co-surety is separately liable at law for no more than an aliquot part to one who has paid the whole, an action for contribution has this disadvantage, that it leaves him who has paid more than his part, exposed to a possibility of loss from insolvency of any one of the contributors, which a bill in equity does not.  1 *Bos. & Pul.* 268; Peter *v.* Rich, 1 *Ch. R.* 45: 1 *Ibid.* 19. Besides, as was said in Craythorne *v.* Swinburne, 14 *Ves.* 164, separate actions, where the contributors are numerous, must be attended with many difficulties.  All this may be avoided by substituting the surety for the creditor, and enabling him, by means of the control which the ownership of the security gives him, to apply it so as to divide the burthen equably among all.  The doctrine of assignment, however, is rejected by Mr Justice Story, (*Eq. Juris.* 472, note 2,) who, on the authority of Gammon *v.* Stone, 1 *Ves.* 339, and Walfley *v.* Sparks, 2 *Ves.* 529, contests the position of Chancellor Kent in Millard *v.* Cheeseborough, 1 *Johns. Chan.* 413, and Avery *v.* Patten, 7 *Johns. Chan.* 11, that a surety who has paid the debt is entitled to an assignment of the security against his principal or co-surety.  The chancellor relied on Morgan *v.* Seymour, 1 *Ch. R.* 150; 3 *Ibid.* 64; and Ex parte Crisp, 1 *Atk.* 35, in which the point was directly adjudged; to which he would doubtless have added Glossop *v.* Harrison, *Cooper* 61, had it been known in this country at the time, but it was made only a few months before. In that case, the surety of a receiver of the opera house, who had advanced money to his principal, which the principal had misapplied by paying it to the tradesmen of the house, instead of the bankers of the trustees, was let in on a balance due to the receiver on the settlement of his account.  Now, though there was no actual assignment to him of the tradesmen's bills, it was by being put in their place, and not in the place of the receiver who had assigned away his interest in the fund, that the surety was relieved.  To have put him in the receiver's place after he had parted with his ownership, would have been to do nothing; and to put him in the tradesmen's place would have been to do no more if the previous payment of their bills had been considered an extinguishment of them in equity as well as at law.  Now the entire ground of the decisions in the elder Vesey's reports, on which Mr Justice Story relies, is the technical effect of payment at law, from which it was inferred, that, as the principal or co-surety might plead it in bar, the assignment of an exploded security would be nugatory.  But this last case proves that what is very payment at law, may not be payment at all in equity; and, where that is the case, it is shown by Parsons *v.* Briddock, 2 *Vern.* 608, that an assignment of the security will be enforced.  In that case, sureties, who had paid the debt when separately sued, were decreed to have an assignment of a judgment obtained against special bail of the principal who had also been separately sued, on the ground that bail stand in the place

of their principal. Now, though the original bond was joint and several, yet payment of the surety's several bond would, at law, equally discharge the several bond of the principal; and, had it been thought that the surety's payment had discharged it also in equity, the same objection would have lain, and doubtless would have been made, to an assignment of the judgment against the principal's bail, as was made in Wolfley *v.* Sparks, that the law court would be bound to set aside any execution which the sureties might issue on it. If payment by one extinguishes the debt as to all, it necessarily extinguishes all the securities given for it, whether joint or several; and it is, therefore, no answer to the preceding case to say, that, as the bond was sued severally, the judgment against the principal debtor's bail was collateral; and that it is not disputed that a surety is entitled to all the creditor's securities of that stamp. Either the point was erroneously decided, or payment has not the extreme effect ascribed to it. It is indeed asserted by Mr Theobald, in his treatise on the law of principal and surety, page 259, on what authority I know not, that "it is *now* held that sureties are entitled to stand in the place of the creditor, and to have the same remedies as he would have had, *only* in respect of collateral securities; and that the payment of a specialty debt by the surety makes him only a simple contract creditor;" an assertion which is incompatible with what he had said in the beginning of the same chapter, that "a surety is entitled to *every* remedy which the creditor has against the principal debtor." That, however, was an assertion of counsel, which he erroneously attributed to the lord chancellor, but which bears so directly on the point at issue, as to have induced Mr Justice Story to strip it of its pseudo-judicial character. But the question may still, perhaps, be considered as an open one, wherever there is a formal administration of equity, though it must be admitted that the weight of authority is on the side of Chancellor Kent. Nor can it be disputed that the reason given for the two decisions on the other side, is more technical than solid. If, as seems to be proved by Parsons *v.* Briddock and Glossop *v.* Harrison, payment at law may leave the demand a subsisting one in equity, it is inconceivable that the same power which can restrain a plaintiff from suing at law for an inequitable demand, may not restrain a defendant also from setting up an inequitable defence. A much more plausible reason is that suggested by Mr Justice Story, that, where the parties are all already before the court, the chancellor may as well do justice to them at once by a direct decree. But, whatever be the foundation of the doctrine of assessment elsewhere, it is certain that we are indebted to it exclusively for our jurisdiction in matters of subrogation. An assignment may be unnecessary where the parties are before a court with chancery powers; but the scantness of our equitable apparatus, sometimes drives us to curious shifts. The necessity we are under of administering equity through the medium of common law

[Croft v. Moore.]

forms, compels us, in cases like the present, to arrive at justice indirectly, by the instrumentality of an imaginary assignment of the security, which enables the surety to apply it, by direction of the court, in a way to cast the burthen on those who ought to bear it. Our leading case is Kuhn *v.* North, 10 *Serg. & Rawle*, 399, in which it was held, that, though payment by a surety with *intent* to discharge the security, extinguishes it in equity as well as at law; yet, that where the amount of the debt is advanced to procure the control of it, equity keeps it afoot to answer the intent of the advancement—a distinction whose value, as the surety can have no motive or intent in a case of involuntary payment, is not very easily appreciated. The general principle, however, has been reasserted in Fleming *v.* Beaver, 2 *Rawle* 132; Burns *v.* The Huntingdon Bank, 1 *Penn. Rep.* 391; and Mehaffy *v.* Shaw, 2 *Penn. Rep.* 378. In our own state, therefore, the question must be considered as at rest.

Now it is clear, on the proofs in the case under consideration, that the note was discounted for the drawer to make up the amount of stock he had agreed to bring into the partnership; and that, though the proceeds of it were, in the first instance, received by the surety who claims to be substituted, yet that he charged himself, at the drawer's request, with the amount to which the drawer's stock account had fallen short. We have then the ordinary case of payment by a surety; and the court below properly directed him to be substituted for the creditor.

Order of subrogation affirmed.