## DOWDY v. BLAKE.

1. **VENDOR AND VENDEE**: *Lien for purchase money reserved in deed: Waiver.*
   Where, on a sale of land, the vendor executes a deed in which a lien is reserved to secure the unpaid purchase money, he does not lose or waive such lien, by taking the vendee's note for the amount secured and afterwards obtainig thereon a personal judgment at law. *Richardson v. Green*, 46 *Ark.*, 267.

2. **SUBROGATION**: *Of co-purchaser of land to vendor's security.*
   Where two persons purchase a tract of land for their equal benefit, receiving a deed therefor in common, and give their joint note for the unpaid purchase money secured by a lien on the land reserved in the deed, one of them who is compelled to pay the whole amount of the note, to protect his own share, will be subrogated to the vendor's security, and to reimburse himself may enforce it against his defaulting co-purchaser or the vendee of the latter, who after partition buys his share with notice of the incumbrance.

APPEAL from *Desha* Circuit Court in Chancery.

J. A. WILLIAMS.

*J. W. House,* for appellant.

The only question which can arise in this case, is, did Treadwell, the original vendor, at the time Blake paid off the judgment or execution against himself and Todd, have a lien on the lands conveyed by Todd to Smith, trustee, and afterwards sold by Smith to Dowdy to satisfy the mortgage debt? If so, can Blake be subrogated to the rights of Treadwell, and enforce the lien for half the amount paid by him against the lands bought by Dowdy? We say not.

1st. Because in the original conveyance by Treadwell to Todd and Blake, the $4,000 note was made payable to Todd, and by him indorsed to Treadwell, and afterwards Treadwell brought his suit at law in the circuit court of Shelby county, Tennessee, and finally obtained judgment in that court, which was afterward affirmed by the supreme court of that state, and by this we assume Treadwell intended to abandon and waive his equitable lien for purchase money, and look to Blake and Todd personally for his de-

mand. Mr. Wasburn in his treatise on real property, in writing as to what will constitute a waiver of the vendor's lien, says: " This lien will be defeated if the vendor do any act manifesting an intention not to rely upon the land for security. 2 *Wash.*, *p.* 90, *4th Ed.*

If we are right in this proposition, then when Treadwell obtained a judgment against them, it was only a personal judgment, not a lien on the land which he had sold them. And if Blake, by paying off the execution, could be subrogated at all, it would only be to the rights of Treadwell, that is, to a personal judgment against Todd for one-half of the amount paid by him; certainly he could not be subrogated to any right or claim superior to the one he had paid.

2d. That Blake and Todd were joint obligors on the notes to Treadwell, and appellee was surety for Todd for any amount he paid over and above one-half of the purchase price of the land, is the strongest view that can be taken for appellee, but this doctrine is not sustained in this state and others, though it is by some of the highest courts of several states. See authorities post. But conceding it to be the true doctrine the appellee cannot recover, for Todd is shown by the record to have paid $9,000 of the $11,000 purchase money, and appellee only paid about $2,000, and acquired no equities against Todd, because he had not contributed his share under the contract. Todd was primarily liable, even if Blake did pay more than his share, and his remedy was against Todd first. He makes no showing of diligence in suing Todd before he was a bankrupt. Todd was primarily liable, and the money should have been made out of him, and if by neglect, he failed to collect when Todd was solvent, he cannot now be subrogated to Treadwell's rights so as to enforce a lien against the lands in the hands of Dowdy. He must have shown that at no time after the recovery of the judgment by Treadwell he could have collected half of the

Dowdy v. Blake.

same from Todd. 4 *Ind.*, 425; 18 *Minn.*, 506; 7 *Leigh,* (*Va.*), 244; 10 *Billon*, (*Ky.*), 239; 5 *Sneed*, (*Tenn.*), 79; 3 *Grant Cas.* (*Penn.*), 114; 31 *Penn. St.*, 89; 7 *Mich.*, 355.

3. Blake and Todd were co-obligors on the note for the purchase money, and when Blake paid the judgment the debt and the judgment were extinguished, and Blake could not be subrogated to any rights as against Dowdy. On the 15th day of December, 1873, Blake and Todd had made a written contract, in which they had divided the lands between them, and each one took possession of his part as agreed upon, and all matters adjusted between them, no lien was reserved in said contract in favor of Blake or Todd, the settlement was complete. After this Todd conveyed to Smith, trustee. Now, after Blake puts Todd in a condition to sell the lands set apart to him in said contract, and he afterwards conveyed them, can Blake set up an equity against said lands, which existed, if at all, at the time said contract was made? In other words, can he set up an equity paramount to a right which he himself has guaranteed to another? We think not. See *Kirby v. Hill*, 4 *Watts & Seargeant, Penn.*, 426; *Barley v. Brownfield*, 2 *Penn. St.*, 41.; *The West Branch Bank v. Armstrong*, 40 *Penn St.*, 278; *Sevan v. Patterson*, 7 *Md.*, 164; *Douglass v. Fagg.* 8 *Leigh, Va.*, 588; *Moore v. Campbell*, 36 *Vt.*, 361; *Hammatt v. Wyman*, 9 *Mass.*, 138; *Brackett v. Wilson*, 17 *Mass.*, 153; *Adams v. Drake*, 11 *Cush., Mass.*, 504; *Rockingham Bank v. Claggett*, 29 *N. H.*, 292; *Preslar v. Stallworth*, 37 *Ala.*, 402; *Saunders v. Walson*, 14 *Ala.*, 198. See also 21 *Ala.*, 59. Dowdy only had notice of a *small balance* of purchase money, and was in reality an innocent purchaser. He did not assume the payments of this balance, nor was the land bound for the amount and Todd discharged from the debt. The recital in the mortgage only served to notify Dowdy that there was a small balance of purchase money due.

Todd was as much bound to pay after the mortgage as before. And this obligation was never altered by Smith's notice of sale and Dowdy's purchase of the land. The terms in the notice of sale and the recitals in the deed from Smith to Dowdy do not increase or diminish Dowdy's liability. Dowdy simply bought all that Todd conveyed to Smith. If Blake has any remedy against the lands set apart to Todd, in their division equity would compel him to first exhaust that remedy against the land Todd had not disposed of.

4. The second does not present a case in which appellee can be subrogated to the rights of the original vendor. 14 *Ill.*, 468; 55 *Ga.*, 575; 4 *Ark.*, 286. Blake and Todd were co-obligors, jointly and severally liable, and if one paid more than the other it created no lien in his favor; it merely gave him a simple contract debt against him.

*X. J. Pindall,* for appellee, with whom is *C. W. Frazier.*

1. The effect of the acceptance of the trust on the part of Dowdy was an admission of the incumbrance, and he took, charged with it, and *subject* to the balance of the purchase money. The land was *advertised* and sold, subject to this charge, *the amount due from Todd* was *ascertained by Smith,* the trustee. Dowdy, the beneficiary, *bought at his own sale,* and is estopped.

2. Dowdy was in no sense an innocent purchaser. *Fargason v. Edrington,* 49 *Ark.* 207. The admissions of the trustee while in discharge of his duty bind his principal. *Ib.*

3. By the partition, all matters up to that date were *settled,* and Blake, having discharged the $2,000 note due and in litigation, was subrogated to Treadwell's rights, and could enforce his lien. *McGee v. Russell,* 49 *Ark.* 104; 2 *Wash., Real Prop.,* sec. 10, (*marg. p.* 75), *page* 216.

Where a lien is retained it passes to assignee. 2 *Wash.,* sec. 18, *page* 92; *Hempst.* 527.

The authorities that Blake should have exhausted Todd first are not applicable, and the same objection lies to the other proposition, that Blake is setting up a right against which he has guaranteed (meaning the partition agreement). 21 *Ala.*, *Hogan v. Reynolds*, is based on 4 *Ala.*, (*N. S.*) 690, and both are under a statue, and do not apply. The *fact* that Todd *charged* the unpaid balance on the land is an answer to all arguments.

5. One who is liable therefor, and pays debts which are assumed of another, and secured, will be subrogated to the rights of the creditor in the security. 32 *Ark.*, 346. Blake being liable, had to pay Todd's half of the debt, which Todd in the partition assumed to pay, and it was secured by lien and is subrogated to the lien of Treadwell. 2 *Jones on Mortg.*, 1089, 1090; 1 *Story*, 477–8, 483, 484–5; 2 *Story*, 1233; 3 *Otto*, 206; 39 *Ark.*, 337; 1 *Wash.*, *R. P.*; 1 *John. Chy.*, 425; 47 *Ark.*, 309–311.

COCKRILL, C. J. Blake and Todd purchased a tract of land in Desha county from Treadwell, in 1869, for $11,000, Todd paying $5,000 of the purchase price at that time. They executed their notes for the deferred payments of purchase money, and their grantors reserved a lien upon the lands sold to secure the payment. In 1871 Treadwell brought suit in Tennessee against Blake and Todd to recover a balance of $2,000 and interest which he claimed was due him on the purchase. The defendants resisted the suit and succeeded in reducing the amount claimed, but judgment was rendered against them for $1,607.27 with interest and costs of suit. Execution issued against the defendants upon this judgment and Blake was compelled to satisfy it. This was in February, 1876. In the meantime Blake and Todd had a settlement of their affairs, adjusted the burden of the unpaid Treadwell debt equally between them, agreed in writing upon a partition of the lands, and without executing deeds to

14

Dowdy v. Blake.

·carry the partition into effect, each entered into the posses-sion of his separate share. After this Todd executed a deed ·of trust upon the lands set apart to him to secure a debt he owed Dowdy, reciting in the deed that the lands were "free from incumbrance except a small balance for the purchase money." This was intended by Todd and understood by Dowdy and the trustee named in the mortgage, to refer to the purchase money due Treadwell, the payment of which Todd and Blake were then contesting in the Tennessee litiga-tion. Todd made default in the payment of his mortgage debt, and the trustee named in the mortgage advertised the land for sale in accordance with the power conferred by the deed. His advertisement of sale contained the statement that he would sell the land "subject to a balance of $865 or thereabouts of purchase money." Dowdy became the pur-chaser at the trustee's sale in March, 1876, to satisfy his debt. This present suit was commenced in December of· the same year by Blake against Dowdy to subject the lands purchased by the latter from Todd to the payment of one half of the Treadwell judgment. The court below granted the plaintiff the relief he desired. Dowdy has appealed. His counsel submits that the questions which arise are, did Treadwell, the original vendor, have a lien on the lands in controversy when Blake discharged the execution against Todd and him-self; and if so, can Blake be subrogated to Treadwell's security and enforce it for any part of the amount so paid, against the lands in the hands of Dowdy, Todd's vendee?

1. VENDOR AND VEN-DEE: Lien for purchase money re-served in deed: Wai-ver.

The reservation of a specific lien in the deed executed by Treadwell to Todd and Blake to secure the purchase money thereafter to be paid for the land, and the accceptance of the · deed by the grantees, created an equitable mortgage, (*Rob-inson v. Woodson*, 33 *Ark.*, 307; *Ober v. Gallagher*, 93 *U. S.*, 199; 3 *Pomeroys Eq.*, secs. 1255 *et seq.*), and the security was not waived or lost by· reason of the fact that the vendor·

took notes from his vendees for the unpaid purchase money, and afterwards sued at law and obtained judgment in personam against them thereon. *Richardson v. Green*, 46 *Ark.*, 267. Treadwell's security was intact when Blake paid the debt. If Todd had not parted with his interest in the land would Blake be subrogated to Treadwell's right to resort to it for the repayment of any part of the purchase money ? In *Bispham's Principles of Equity* it is said to be the rule that the right of subrogation does not exist " between parties who are equally bound—as for example co-partners, co-obligors, and co-contractors." *Sec.* 337. The same doctrine is stated in terms almost as broad by the annotators of the leading cases in equity (*Dering v. Earle of Winchelsea, vol.* 1, *pt.* 1, 147 ; *Aldrich v. Cooper, vol.* 2, *pt.* 1, 281,) and in *Engles v. Engles,* 4 *Ark.*, 286; *S. C.* 38 *American Dec.*, 37, the rule as thus announced seems to have been followed by this court in a case where one co-purchaser had paid more than his share of the purchase money—though the attention of the court in that case was not directed to the doctrine of subrogation.

The broad statement of the rule as given above cannot be said to be generally sustained by the adjudicated cases, and much authority qualifying if not denying it, at least as far as co-obligors are concerned, might be quoted. Thus in the case of *Pratt vs. Law*, 9 *Cranch*, 456, (*S. C.* 5 *Wheat.*, 429), three persons mortgaged their joint property to indemnify the drawer of bills of exchange drawn for their mutual accommodation ; sold the bills and divided the proceeds equally among themselves, each agreeing to pay one-third of the amount if the bills should be returned protested ; they were so returned and Greenleaf, one of the three mortgagors, paid the whole debt. The question arose between the assignee in bankruptcy of Greenleaf and one who had acquired title to the interest of the other two mortgagors in the mortgaged property by purchase at sheriff's attachment sale after the

bills had been taken up by Greenleaf. It was argued there as here, that payment by one of the co-obligors discharged the mortgage (see page 482), but the court held that a two-thirds equitable interest in the mortgage passed to the mortgagor who discharged the debt, and that the assignee succeeded to it and could enforce it against the land in the possession of the subsequent purchaser. The court say: "Had these bills not been taken up, and the holder prosecuted all the drawers and endorsers to insolvency, there can be no doubt that the holder would have been entitled to charge the mortgage premises, in equity, with the payment of the bills. But what difference is there, in equity, between the case of any other holder of these bills, and that of Greenleaf, who, liable, equitably, only for one-third was compelled to take up the whole, and did it with his own funds. It consists only in this; that the one becomes creditor for the whole; the other only for two-thirds."

It is not difficult to dispose of the question now under consideration when the relation of the parties—that is, of Todd and Blake, is understood. A joint note having been given by them to the vendor for the purchase money, they were principal debtors in their relation to him, and were jointly and severally bound to him for the whole amount. But the purchase was made for their equal benefit. The land was to be shared equally between them, and the implication of law, in the absence of an agreement to that effect, is that they intended to adjust the burden of the purchase in like proportion. This is upon the maxim *qui sentit commodum, sentire debet et onus.* The obligation between themselves was therefore that each should discharge one-half the burden, and each become the surety of the other to the extent of the debt which the other was to pay. *McGee v. Russell,* 49 *Ark.*; *Owen v. McGeehee,* 61 *Ala.,* 440; *Ackerman's Appeal,* 106 *Penn. St.,* 1; *Seetzler v. Mitchell,* 37 *Id.,*

82 ; *Crafts v. Mott,* 4 *Comstock,* 604 ; *Chipman v. Morrell,* 20 *Cal.,* 130 ; *Goodall v. Wentworth,* 20 *Maine,* 322 ; *Fletcher v. Grover,* 11 *N. H.,* 368 ; *Stokes v. Hodges,* 11 *Rich So. Eq.,* 135 ; *Sheldon on Subrogation, sec.* 169.

Now when one in the situation of a surety pays the debt of him who is primarily liable, equity puts him in the place of the creditor whose debt he has discharged, and gives him the benefit of the securities which the creditor has obtained from the principal debtor. Though no assignment of the security is actually made, equity treats it as having been done. *Newton v. Field,* 16 *Ark.,* 232.

" The principle is a general one," says Mr. Bispham, "and will apply in every instance (except in the case of a mere stranger) where one man has paid a debt for which another is liable." It is eminently calculated to do exact justice between persons who are bound for the performance of the same duty or obligation, and is therefore much encouraged and protected." *Principles of Equity, secs.* 336, 337.

" It is a mode," says Judge Strong, in *McCormick v. Irwin,* 35 *Penn. St.,* 111, " which equity adopts to compel the ultimate discharge of the debt by him who in good conscience ought to pay it, and to relieve him whom none but the creditor could ask to pay," and it is not confined to cases of strict suretyship. *Schoqnover v. Allen,* 40 *Ark.,* 136.

From these statements of the general principles of subrogation, it seems clear that one co-purchaser who has paid a part of the common obligation which the other in good conscience ought to have paid, and for which, as between themselves he is primarily liable, would be substituted to the rights of the creditor in order that injustice might not be done. But we are not without analogous cases to sustain the position.

The equity of subrogation springs out of the right to contribution, and is only one of the means by which that right

Dowdy v. Blaka.

is enforced. *Bisph. Equity, sec.* 335. The cases recognizing
the right to contribution are therefore in point. The right
of contribution between co-purchasers has been frequently
recognized and enforced. *Owens v. McGeehee* and other cases
*supra.* As direct authority upon the question, we quote
from the opinion in the case of *Ackerman's Appeal,* 106 *Penn.
St., supra.*: " In *Gerhardt v. Jordan,* 1 *Jones,* 325, (11
*Penn. St.*), it was held that the rule (as to subrogation)
embraces purchasers in common of an estate bound by a
joint lien ; as between themselves, the purpart of each is
liable to contribute only its proportion of the common bur-
den, and beyond this, is to be regarded simply the surety of
the remaining purparts. In this respect they are to be
treated as the several estates of joint debtors, one being
surety of the other ; and if the purpart of one is called upon
to pay more than its due proportion, the tenant or his lien
creditors, upon the principle settled in *Flemming v. Weaver,*
2 *R.,* 128 ; *Crofts v. Moore,* 9 *Watts,* 451, and *Neff v. Miller,*
8 *Barr,* 347, is entitled to stand in the place of the satisfied
creditor, to the extent of the excess, which ought to have
been paid out of the other shares." The doctrine of *Ger-
hardt v. Jordan* was recognized in the late case of *Watson's
Appeal,* 9 *Norris,* 426 (90 *Penn. St.*), where it was said by
Mercur, J., " As between two mortgagors of land held by
them as tenants in common, and third persons, each mort-
gagor is liable for the whole sum secured by the mortgage ;
but as between themselves each is liable for one-half only.
As to the other half, each is surety for the other."

2. S U B R O-
GATION :
Of co-pur-
chaser of
land to ven-
dor's secur-
ity.

In *Simpson v. Gardnier,* 97 *Ill.,* 237, where two persons
purchased land, receiving a deed therefor, not in severalty,
but to them in common, gave their joint notes for the unpaid
purchase meney, secured by their joint mortgage on the
entire tract, and one of them was compelled to pay the whole
amount of the notes and interest to save his own share of the

land, it was held, that the party so paying off the incumbrance was entitled to contribution, and to be subrogated to the rights of the mortgagee, and to enforce the lien of the mortgage as to the money paid above his own proper share. To the same effect are *Williams v. Perry*, 20 *Ind.*, 437 ; *Fisher v. Dillon*, 62 *Ill.*, 379.

For the purposes of subrogation there is no difference between a vendor's lien by reservation in the deed, and the mortgage given back by the vendee to secure the purchase money. 3 *Pomeroy's Eq.*, secs. 1255 *et seq.* The Illinois and Indiana cases cited are therefore directly in point. The case of a joint mortgage by tenants in common is also analogous, and in such cases it is held that if one of the tenants pays off the whole debt, the lien of the mortgage is preserved as against his defaulting co-tenants to reimburse him. *Sheldon on Sub.*, secs. 2, 172–3, and cases cited.

It follows that Blake's equity was perfect as against Todd. Does Dowdy, his vendee, stand in a better position ? " Where the right of subrogation exists as against a principal debtor, it may also be enforced against one claiming under him as a purchaser with notice." *White & Tudors note to Aldrich v. Cooper*, 2 *Leading Cases in Equity*, pt. 1, p. 280.

Dowdy purchased with notice. Aside from being charged with constructive notice of the purchase money incumbrance by the reservation of the lien in Treadwell's deed to Todd and Blake, which is a link in his chain of title, and was also of record, before he acquired an interest in the land, the deed of trust under which he acquired his title, recites that the land was then subject to the payment of a balance due from his vendor for the purchase money. He knew of the pendancy of the Tennessee suit to recover of Todd and Blake the amount then due on that account. His claim is that when he purchased at the trustee's sale he supposed the lien had been discharged by the payment made on the Tennes-

see judgment. It is not probable that Dowdy believed this to be true, for we find the trustee then advertising to sell the land, subject to a lien for the purchase money, equal in amount to about one-half of the Tennessee judgment. As the trustee makes the sale in such cases at the request of the beneficiary, and ordinarily acts under his advice, it is most probable that the statement contained in the notice of sale was made with Dowdy's acquiescence. But the proof does not show that he knew of it, and if we concede that the trustee exceeded his authority in advertising that he would sell the land subject to the specific amount named as a lien, it does not relieve Dowdy. It is charged in the complaint and admitted in the answer that at the time of the partition between the purchasers an adjustment of the burden of the purchase price was made, and that it was then agreed between them that the residue, whatever the result of the suit then pending between them and Treadwell might be, should be borne equally. This occurred before Dowdy's deed of trust was executed. Nothing thereafter transpired to deceive or mislead him. We are not informed that either the judgment record or record of the reserved lien in the deed had been cancelled or in any manner satisfied. Both must have warned Dowdy that the lien was still subsisting. If he was informed that one of the parties to the judgment, without knowing which, had paid the amount of the recovery to the judgment creditor, he was not justified in supposing that the lien was extinguished, because he is charged with knowledge that equity would preserve the incumbrance if the payment was made by Blake to protect him from loss by reason of paying Todd's share. Blake's obligation to discharge the incumbrance was not altered by the substitution of Dowdy for Todd.

The case of *Clark v. Warren*, 55 *Ga.*, 575, is relied upon by the appellant to sustain the position that one co-pur-

·chaser is morally and equitably bound to pay off and dis-
charge the mortgage debt for the protection of the vendee of
the other co-purchaser.   That case seems to belong to the
·class refusing to extend the doctrine of subrogation to co-
obligors.   If that is not the meaning of the case it is
authority to the point stated.   But we cannot assent to the
proposition that one of two co-purchasers who stand upon
the same footing has the power to clothe his vendee, who is
in the full knowledge of all the facts, with a better garb
than invests his own rights, thereby increasing the burden
·of his co-owner without fault on the part of the latter.

If we regard Todd as Blake's principal, and the land,
after the sale to Dowdy, as his surety, the failure to sue
Todd before his adjudication as a bankrupt, which occurred
at an unknown day in 1876, did not release the land.  *Haw-
kins v. Mimms*, 36 *Ark.*, 145.

It does not appear from the bill, as the appellant assumes,
that Dowdy became the purchaser of a part only of the Todd
land, or that Todd is still the owner of a part.   If there
·could have been a marshalling of assets, and Dowdy desired
it, he should have brought the proper parties before the
·court and adopted the ordinary means to effect that result.
*Woodruff v: Ringo*, 43 *Ark.*, 469.   He made no effort in any
form to do so, and the objection now comes too late.

Affirm.