HENRY OLIVER, APPELLANT, V. JAMES F. LANSING ET AL., APPELLEES, AND WILLIAM OLIVER, APPELLANT.

FILED JANUARY 5, 1899.  No. 10050.

1. **Judgment:** EFFECT OF REVERSAL. When a judgment of the district court is reversed in an appellate proceeding it ceases, from the date of the reversal, to be a lien on the lands of the judgment debtor.

2. ———: ———. A person who purchases real estate burdened with the lien of a judgment will hold it discharged of such lien in case the judgment be afterwards reversed.

3. ———: ———: LIEN OF SUBSEQUENT DECREE. The subsequent rendition of another judgment in the same cause will not revive the lien so as to make it effective from the date of the original judgment.

4. ———: SPECIAL FINDINGS: REVIEW. A judgment predicated on special findings of fact will be reversed if such findings are insufficient to sustain it, and its correctness is not otherwise affirmatively shown.

5. ———: ———: SPECIFIC LIEN. A finding that one of the parties to an action has obtained a judgment against the other in a collateral suit does not warrant the inference that such judgment is based on a specific claim.

6. **Special Findings:** PRESUMPTIONS ON REVIEW. There is no presumption of law that questions submitted to a trior of fact have been established beyond the limits of the special findings made by him.

7. **Co-Tenants:** LIABILITIES INTER SE: LIENS. As between themselves, co-tenants are liable for the payment of liens and incumbrances

existing against the common estate, in proportion to their respective interest therein, each being surety for the others.

8. ——: ——: ——: SUBROGATION. Where one tenant in common has paid more than his proper share of a charge upon the common property, his interest or ownership therein is not proportionally expanded, but he is, to the extent of the excessive contribution, subrogated to the rights of the lien creditor to whom the payment has been made.

9. ——: ——: ——: ——. The right acquired by such subrogation does not pass to the mortgagee under a mortgage purporting to convey the undivided interest of the owner of the right in the common property.

10. Partition: JUDGMENT: EQUITABLE LIEN: SET-OFF. In an action for partition a judgment lien in favor of one co-owner, upon the interest of the other, is properly offset against an equitable lien in favor of the judgment debtor, upon the interest of the judgment creditor in the joint estate.

11. ——: COSTS: ATTORNEY'S FEES. The plaintiff's attorney's fees are not taxable as costs in an action for partition where the proceedings are adversary.

APPEAL from the district court of Lancaster county. Heard below before HOLMES, J. *Reversed in part.*

*Joseph R. Webster* and *Halleck F. Rose,* for appellants.

*Lionel C. Burr* and *Roscoe Pound,* contra.

SULLIVAN, J.

The litigation between Lansing and Henry Oliver has vexed the courts for years. A serial history of it will be found in the cases of *Oliver v. Lansing,* 48 Neb. 338, *Oliver v. Lansing,* 50 Neb. 829, and *Oliver v. Lansing,* 51 Neb. 818. This appeal is a proceeding in the suit for partition, and brings here for review the judgment of the district court confirming the referee's report on incumbrances, and directing distribution of the fund obtained from the sale of the real estate in controversy. The main question presented for decision grows out of the conflicting claims of the plaintiff's creditors to his share of the fund. His brother, William Oliver, claims it under a mortgage executed to him during the pen-

27

dency of the action, while the defendant claims it by
virtue of a judgment rendered in his favor by the dis-
trict court of Lancaster county in a collateral suit be-
tween the original parties to this cause.   To a proper
understanding of the grounds upon which the rival
claimants assert title it will be necessary to mention
some of the steps previously taken in the progress of
the case.   In the answer filed to the plaintiff's demand
for partition it was alleged that the plaintiff had ac-
quired his interest in the property by purchase from the
defendant and had not paid for the same.   It was also
charged that the plaintiff was indebted to the defendant
in a large amount for expenditures made by him in im-
proving the property.   There was a prayer for an ac-
counting and for a specific lien on the property for what-
ever sum should be adjudged in defendant's favor.   A
supplemental answer set forth that the defendant had
recovered a judgment against the plaintiff in an action
in the same court for the sum of $9,673.66, being pur-
chase-money due for a part of the real estate in dispute.
A reply was filed by the plaintiff, and, upon a trial of
the issues joined, the court, on January 29, 1894, made
the following finding:

"Sixth—The court further finds that defendant James
F. Lansing, on the 26th day of June, 1893, recovered in
this court a judgment against the plaintiff Henry Oliver
for the sum of $9,673.66; that within twenty days there-
after plaintiff filed a supersedeas bond in said action in
double the amount of said judgment, which was ap-
proved by the clerk, and said action is now pending on
appeal in the supreme court; that said judgment is a
lien upon plaintiff's interest and share in said real es-
tate, but that by reason of such appeal and filing and
approval of said bond is not now enforceable, but that
the lien of said Lansing pending such appeal should be
saved, and the amount of said judgment lien, in case said
premises be partitioned without sale, should be charged,
subject to the finding of the supreme court on said ap-

peal, upon the parcel set off to plaintiff in severalty, or, in case of sale, upon the share of the proceeds of said plaintiff, to be withheld on distribution from plaintiff till said appeal is determined, then to be distributed accordingly as the rights of said parties may be determined on said appeal."

Afterwards the plaintiff, claiming that the judgment mentioned in the foregoing finding had been reversed by this court, asked for the appointment of a referee to inquire into the nature and amount of incumbrances on the property and make a report concerning the same. The matter was referred to Edward P. Brown, Esq., who found and reported: (1) That on June 26, 1893, in a separate action for an accounting then pending in the district court of Lancaster county, James F. Lansing recovered judgment against Henry Oliver for the sum of $9,673.66; (2) that said judgment, on appeal to this court, was reversed on May 6, 1896; (3) that on February 23, 1897, the judgment rendered by the district court in the collateral suit was modified by reducing the amount thereof to $5,610.36; (4) that this judgment, being brought here for review on error, was reversed on June 3, 1897, and a judgment rendered in this court for $7,156.17; (5) that the last mentioned judgment was, pursuant to the mandate, entered in the district court on October 30, 1897; (6) that on January 29, 1897, Henry Oliver and Julia Oliver, his wife, executed to William Oliver a warranty deed conveying the premises in controversy as security for a *bona fide* indebtedness amounting to nearly $30,000; (7) that William Oliver took said conveyance with notice of the proceedings in this action "and subject to the decree therein pronounced;" (8) that the deed to William Oliver was duly recorded February 10, 1897. Upon these facts the referee reached the conclusion that the mortgage of William Oliver was a lien on the fund in question, subject to the lien of Lansing's judgment for $7,156.17. The trial court approved this conclusion, but its correctness is challenged by the appeal.

It is quite obvious that the Lansing judgment, considered without reference to the claim on which it was based, would be a lien on the plaintiff's interest in the property, or in the proceeds resulting from a sale of such interest, subordinate to the mortgage lien in favor of William Oliver. It is true, of course, as found by the referee, that William Oliver took his conveyance with notice of the pendency of this action and subject to the decree previously pronounced in favor of Lansing; but the permanence of the lien established by that decree was expressly declared to be dependent on the action of this court in the collateral suit. The judgment in the collateral suit was reversed. Its vitality was extinguished, and the lien which depended on its existence was lost. So the finding of the referee upon this point means nothing more than that William Oliver took his conveyance with full knowledge of Lansing's lifeless judgment. All this apparently is conceded by counsel for Lansing, but it is urged with great earnestness that the judgment finally rendered by this court in the collateral suit represents a portion of the purchase price of the property in question; and that, there being a demand for a specific lien asserted in both the cross-petition and supplemental answer, the rights acquired by William Oliver under his deed are subject to the rights of the defendant as ultimately fixed by the judgment of the trial court in this cause. The difficulty with this position is that the record contains no sufficient facts to sustain it. The defendant alleged that his claim was for purchase-money. He alleged that the judgment recovered in the collateral action was for the purchase price of the property in dispute; but the district court, on a trial of the issues, found only that he had a judgment. This finding was, in legal effect, a denial of Lansing's demand for a specific lien grounded on the peculiar character of his claim. The judgment of January 29, 1894, was a final adjudication of all the material facts submitted to the court and within the issues. It was

not an adjudication in favor of Lansing upon his asserted right to a specific lien. It merely gave contingent recognition to the lien of a general judgment previously pronounced. Neither is there in the report of the referee appointed to make inquiry touching liens and incumbrances on the partitioned estate any fact from which it may be inferred that the judgment rendered by this court in the collateral suit represents any portion of the purchase price of the lots in controversy. He finds only that the action in which the judgment was rendered was brought by Oliver against Lansing for an accounting. The judgment awarding Lansing a prior lien on the fund in court for distribution would only be warranted by a finding that the basis of the lien was a balance due on account of the sale to Oliver of an interest in the partitioned property. There being no such finding, the conclusion of the referee is unsustained by the facts, and the court therefore erred in confirming his report.

Another complaint of the appellants relates to the disposition made of certain claims which accrued to the plaintiff against the defendant during the pendency of the litigation. From the report of the referee it appears that subsequent to the entry of the decree confirming the shares of the parties and directing partition to be made the plaintiff paid, to discharge taxes and reduce incumbrances on the joint estate, the sum of $2,958.03 more than was paid by the defendant for the same purpose. Half of this amount, being $1,479.02, was credited on the judgment in favor of Lansing. The objection to this action of the trial court is that, in effect, and by indirection, it gave to Lansing a prior lien on Henry Oliver's share of the fund, to the extent of the amount so credited. But of this neither of the Olivers is in a position to complain. In the absence of an explicit finding to the contrary we assume that the mortgage to William Oliver purported to cover nothing more than Henry Oliver's undivided half-interest in the land. Lansing and Henry Oliver being joint and equal owners of the property,

each was liable for one-half the liens and incumbrances existing against it. To the lien creditors the land itself was, of course, liable; but as between the owners each was liable primarily for one-half the existing charges, and for the other half only as surety for his co-tenant. (*Watson's Appeal*, 90 Pa. St. 426; *Fisher v. Dillon*, 62 Ill. 379; *Newbold v. Smart*, 67 Ala. 326.) It is a familiar principle of equity jurisprudence that a surety who has paid off the debt of his principal is entitled to be subrogated to the securities in the hands of the creditor to whom payment has been made. By the fact of payment the surety becomes an equitable assignee of such securities and entitled to enforce them for his own indemnification. An actual assignment is not necessary. Equity treats the assignment as having been made. In 24 Am. & Eng. Ency. of Law 236 the rule is thus stated: "If one of several tenants in common pay off a lien binding the common property, there will be no merger of his demand, but he will be considered a surety for his co-tenants and subrogated to the rights of the creditor against them for their proportion of the debt." In *Fischer v. Eslaman*, 68 Ill. 78, it is said: "Where one tenant in common removes an incumbrance from the common estate, the other tenants must contribute to the extent of their respective interests, and to secure such contribution a court of equity will enforce upon such interests an equitable lien of the same character with that which has been removed by the redeeming tenant." In *Titsworth v. Stout*, 49 Ill. 78, it is said: "The redeeming tenant in common, in order to secure contribution, is substituted to the same lien which he has redeemed." Other cases to the same effect are *Rankin v. Black*, 1 Head [Tenn.] 650; *Gee v. Gee*, 2 Sneed [Tenn.] 395; *Dowdy v. Blake*, 50 Ark. 205. We have been referred by counsel to no case, and in the course of a pretty thorough investigation have found none, in which it is held that payments made by one co-tenant beyond his just proportion, to reduce incumbrances, results in an expansion of the interest or

ownership of such tenant in the common property. On the contrary, the doctrine of all the authorities seems to be that his interest, in such case, remains the same, but that to the extent he has made payments beyond his share he stands in the shoes of the creditor to whom the payments have been made. This being so there is no ground for the contention that the rights which Henry Oliver acquired against Lansing as equitable assignee of the lien creditors passed to William Oliver under the warranty deed. Had that instrument assumed to convey the entire property a different question would be presented.

The plaintiff further complains of the action of the court in denying his motion to have his counsel's fees taxed as costs. Section 841 of the Code of Civil Procedure is as follows: "All the costs of the proceedings in partition shall be paid in the first instance by the plaintiffs, but eventually by all the parties in proportion to their interests, except those costs which are created by contests above provided for." It was said in *Stanton County v. Madison County*, 10 Neb. 304, that statutes giving costs "are not to be extended beyond the letter, but are to be construed strictly." The term "costs," in its common acceptation, does not include attorney's fees, and whatever may be the rule in friendly actions for partition, we are entirely clear that there is no authority under the section quoted for taxing such fees in cases like this where the plaintiff's title or right to partition is contested. If this were not so, as was said in *Swartzel v. Rogers*, 3 Kan. 380, "the more doubtful the plaintiff's right of recovery, the greater shall be the defendant's liability to plaintiff's counsel for costs." In *Hutts v. Martin*, 134 Ind. 587, it was held that a statute providing for the taxation of all costs and necessary expenses against the partitioners was not broad enough to cover a liability for attorney's fees incurred in prosecuting an action for partition. In *Kilgour v. Crawford*, 51 Ill. 249, construing a statute providing for the allowance of coun-

sel fees in suits for partition, the court say: "Where the proceedings are amicable, and the parties defendant do not deem it necessary to employ counsel to protect their interests, it is proper that the power given by this law should be exercised, as all the parties have the benefit of the partition. But where the defendants deem it necessary to employ counsel, in order to protect their interests, and secure a just partition, or an equitable assignment of dower, we can see no reason why they should be required not only to pay the fees of their own counsel, but also a part of the fees of adverse counsel. This is not done in other legal proceedings, in some of which it might be done with much more propriety, as when, for example, a defendant is resisting the payment of an honest debt. In these partition proceedings the defendants have generally been guilty of no default or wrong. In many cases there are minor heirs or married women, which circumstance renders legal proceedings unavoidable, and even where there are not, the mere fact that the joint owners have not been able to agree upon a partition is no reason why the defendants should be made to pay the counsel of complainants. We are satisfied that the act should be construed as intending the taxation of counsel fees only in cases where the proceedings are amicable." The same rule is recognized in *Finch v. Garrett*, 102 Ia. 381, *Grubbs' Appeals*, 82 Pa. St. 29, *Fidelity Ins. Trust & Safe Deposit Co.'s Appeal*, 108 Pa. St. 342, *Metheny v. Bohn*, 164 Ill. 495, *Lang v. Constance*, 46 S. W. Rep. [Ky.] 693, and *Duncan v. Duncan*, 63 Ia. 150. The judgment of the district court is reversed to the extent that Lansing's judgment is given priority over the lien of William Oliver's mortgage on the fund in question. In all other respects the judgment is affirmed. A judgment will be rendered in this court modifying the judgment of the district court in accordance with the views herein expressed.

Judgment accordingly.