DAN CARY AND CORNELIA S. CARY, SUBSTITUTED AS PLAINTIFFS FOR JOHN F. NELSON, JR., APPELLANTS, v. OTTO A. ARMBRUST ET AL., APPELLEES, IMPLEADED WITH JOHN L. ARMBRUST, AN INCOMPETENT PERSON, APPELLANT.

70 N. W. 2d 427

Filed May 13, 1955. No. 33706.

*Cranny & Moore,* for appellants Cary.

*George L. DeLacy,* for appellant Armbrust.

*Jack W. Marer* and *Samuel V. Cooper,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

YEAGER, J.

This is an action for partition of real estate by Dan Cary and Cornelia S. Cary, plaintiffs and appellants,

against John L. Armbrust, defendant and appellant; and Otto A. Armbrust, Helen Armbrust, Peter Hansen, Jr., and Bernice Hansen, defendants and appellees. A trial was had to the court following which a decree was entered in which it was adjudged that the plaintiffs were the owners of an undivided three-fifths interest in the land in question; that Otto A. Armbrust had an undivided one-fifth interest; and that John L. Armbrust had an undivided one-fifth interest therein. In addition to this William W. Wenstrand was appointed referee to make partition of the real estate and to make his report to the court.

The regularity and propriety of this decree is not brought into question in this appellate proceeding.

It ought to be said at this point that the record discloses that John L. Armbrust, because of physical handicaps, was and is incapable of protecting his own interests and because thereof George L. DeLacy was appointed by the court as guardian ad litem to represent and protect his interests.

The referee qualified and in due time made his report. The report to the extent necessary to set it forth here is as follows: "The Referee therefore finds and hereby reports that it is impossible to divide and partition the premises without great prejudice to the owners thereof; that from his investigation, there is a ready and active market for tracts of this kind and the entire tract may be sold at a fair price; that it is to the advantage of the parties that the tract be sold and the proceeds thereof divided among the parties in proportion to the respective interests in the land."

The defendants Otto A. Armbrust and Helen Armbrust filed objections to the report of the referee. In the objections they asserted that it was practicable and feasible to divide the land in kind.

A hearing was had on the objections, whereupon a decree was rendered setting aside the report of the referee and partitioning the real estate in kind. By this

decree also the plaintiffs were denied an attorneys' fee for their attorneys.

The land in question consists of 120 acres or three contiguous 40-acre tracts. One of these is bounded on the south generally speaking by a highway known as Center Street. The south line departs from Center Street slightly northward but this is of no real consequence for the purposes of the case. The east line is a highway known as Ninetieth Street. This one will be hereinafter referred to as the southeast forty. Another 40 acres is immediately to the north. Its east line is also Ninetieth Street. Its north line is Shirley Street. This one will be referred to as the northeast forty. Immediately to the west of this is the third 40 acres. It will be referred to as the northwest forty.

There is no evidence outlining with any degree of accuracy the contours of this land but from the evidence it may be said that in the northeast portion the elevation is higher than that of the south and west portions. The slope of the land is to the south and west. Where the slope ends and the low level begins is not pointed out. There is a large drainage ditch extending from northwest to southeast which severs about 8 acres in the southwest corner from the remainder of the northwest forty. This ditch also severs about 4 acres from the southwest corner of the southeast forty. All of the land has in the past been used for agricultural purposes. Land immediately to the north of the 120 acres has been platted for residential use. This is true of some, if not all, of the land to the northeast and east on the other side of Ninetieth Street.

In partitioning the land in kind the court allotted to plaintiffs an area of about 56 acres. This area extends east and west all the way across the northeast and northwest forties with the north line thereof as the north boundary. The depth of the area southward varies. The greatest depth is on Ninetieth Street. Otto A. Armbrust was alloted about 24 acres. This is to the

south of that allotted to plaintiffs. Eight acres are in the northwest forty and the rest is part in the northeast forty and part in the southeast forty. John L. Armbrust was allotted what remained in the southeast forty including the part severed by the drainage ditch and that part of the northwest forty which was severed by the drainage ditch. He was allotted about 40 acres.

The plaintiffs and the defendant John L. Armbrust duly filed motions for new trial, which motions were overruled. From this decree and from the order overruling the motions for a new trial the plaintiffs and the defendant John L. Armbrust have appealed. The defendants Hansen, who were tenants on the land, are not parties to the appeal.

The brief of appellants contains 40 separate assignments of error but one alone is basic in the determination of the issues presented. This one contains the contention that the court erred in sustaining the objection of appellees to the report of the referee and its refusal to approve and carry it into effect.

A determination upon this contention requires an outline of the situation involved and also an analysis of the surrounding evidentiary considerations as disclosed and the reasonable inferences and conclusions to be drawn therefrom.

It also requires an application of certain recognized principles of law to this outline and analysis. Some of these principles are as follows:

"As between a partition in kind or sale of land for division, courts will favor partition in kind, since it does not disturb the existing form of inheritance or compel a person to sell his property against his will." Trowbridge v. Donner, 152 Neb. 206, 40 N. W. 2d 655. See, also, McClave v. McClave, 60 Neb. 464, 83 N. W. 668.

"A sale in partition cannot be decreed merely to advance the interests of one of the owners, but before ordering a sale, the court must judicially ascertain that the

interests of all will be promoted thereby." Trowbridge v. Donner, *supra.*

In an equity action the Supreme Court will, in determining the weight of evidence which is in irreconcilable conflict on a material issue, consider the fact that the trial court observed the witnesses and their manner of testifying. Gentry v. Burge, 129 Neb. 493, 261 N. W. 854; Maddox v. Maddox, 151 Neb. 626, 38 N. W. 2d 547; Cain v. Killian, 156 Neb. 132, 54 N. W. 2d 368.

The appellants Cary called several witnesses who had knowledge of the area and of residential conditions in Omaha and its environs, experience in the laying out and promotion of such areas, and knowledge of values in such situations. They described generally the land in question and gave their opinions as to the best use to which this land could be put and the manner in which it could be most profitably utilized in the interest of the owners. Their opinion was to the effect that this interest and this utility would be best served by a plan for the development of the entire tract as a residential area; that the value for this purpose would greatly exceed the use of the tract for agricultural purposes; and that the value as a whole would greatly exceed the combined value of separate tracts if the area should be partitioned in kind.

On the other side Otto Armbrust called a witness who qualified for the purposes of giving an opinion as to the best use to which the land could be put and the manner in which it could be most profitably utilized in the interests of the owners. His opinion was the opposite of that of the witnesses for the appellants Cary. He gave it as his opinion in effect that the land could be partitioned in kind in the best interests of the parties. In truth the land was partitioned by the court pursuant to a plan proposed by this witness in his testimony.

The testimony of this witness antecedent to his opin-

ion however appears to take much from the value of the opinion.

In his antecedent testimony he testified that for agricultural purposes one forty was worth $350 an acre, one was worth $300 an acre, and the other was worth $250 an acre. The total value for agricultural purposes on the basis of this testimony would be $36,000. He further testified that the total value, obviously for the purpose of sale for residential development, was $80,000. He attributed to the 56 acres allotted to plaintiffs a value of $48,000. This in effect would attribute to the remainder a value of $32,000. This attributed value was with reference to residential development and not agricultural purposes.

It is inferable, since under the partition plan he was allotted 40 acres for his share, that John L. Armbrust got the least valuable land or land which was worth $250 an acre for agricultural purposes, or land worth $10,000 for those purposes.

It is inferable that the land allotted to Otto A. Armbrust was not the highest in value for agricultural purposes, but assuming that it was and was worth $350 an acre the total value would be $8,400. If it was of the value of $300 an acre its total value would be $7,200. On one of these theories the total value of the land allotted to John L. and Otto A. Armbrust would be $18,400 and on the other $17,200.

Therefore on the basis of one of these hypotheses and an assumption that the purpose was to use the lands allotted to John L. and Otto A. Armbrust for agricultural purposes, there would be a combined detriment to them by partition in kind of $14,800, and on the other of $13,600.

Assuming that the land is worth $65,000 instead of $80,000 for residential purposes and following through on the land values for agricultural purposes fixed by the witness and the hypothesis employed, the value of the land allotted to John L. and Otto A. Armbrust for resi-

dential development would be $26,000, thus resulting in disadvantage to the two on one theory of $8,800 and on the other of $7,600.

This assumption has a basis since the record discloses that plaintiffs or their representatives offered to buy the tract for $65,000 and that they did pay $39,000 for a three-fifths interest in it.

No violence to the record is involved in the assumption that the value attributed to the lands by appellees is their value for agricultural purposes. This is evidenced by the following appearing on the last page of their brief: "The remainder of the farm, even according to the Appellants' witnesses, is not suitable for subdivision, but for pasture and farming, which is exactly what it has been used for for years and years and which these Appellees intend to use it for in the future."

Of course these hypotheses, in and of themselves, do not determine whether or not the objections to the report of the referee should be sustained and the real estate partitioned in kind as it was, but they do have a material bearing in the ascertainment of the true force and effect of the testimony of the witness for Otto A. Armbrust. In this light it is difficult to escape the conclusion that the true effect of the testimony of this witness is to say as did the witnesses for the plaintiffs that the best interests of all owners, even including Otto A. Armbrust, and especially those of the incapacitated John L. Armbrust, would be served by a sale as recommended by the report of the referee. This appears to be the proper conclusion even in face of the fact that the trial court observed the witnesses on the trial and their manner of testifying.

Accordingly it must be said that the court erred in its order sustaining the objections to the report of the referee and it further erred in refusing to order a sale in conformity with the report.

This conclusion makes unnecessary a consideration of all the other assignments of error except one. That

one relates to the refusal of the court to allow a fee for the attorneys for the plaintiffs.

In Oliver v. Lansing, 57 Neb. 352, 77 N. W. 802, the following rule was laid down by this court on the question of taxability of attorney's fees for plaintiff's attorney in partition cases: "The plaintiff's attorney's fees are not taxable as costs in an action for partition where the proceedings are adversary."

This general rule has been approved in Johnson v. Emerick, 74 Neb. 303, 104 N. W. 169; Branson v. Branson, 84 Neb. 288, 121 N. W. 109; Harper v. Harper, 89 Neb. 269, 131 N. W. 218; and Smith v. Palmer, 91 Neb. 796, 137 N. W. 843. All of the cases make it clear that if the proceedings are adversary the attorney's fees are not allowable. In all of the cases adversary is treated as the opposite of amicable.

In none of the cases has this court by its own expression defined adversary proceedings. Definitive language however was adopted in the opinion in Oliver v. Lansing, *supra,* from Kilgour v. Crawford, 51 Ill. 249. It appears from this language that the point which chiefly controls in determining whether or not a partition action is amicable or adversary is: Did the defendants deem it necessary to employ counsel to protect their interests? It is obvious from the record in this case that Otto A. Armbrust deemed it necessary to have counsel to protect his interests.

By inference from Harper v. Harper, *supra,* this court has said that the adversary proceeding rule applies to proceedings after decree in partition as well as before. In that case a fee was allowed. Apropos of this, this court said: "The allowance itself necessarily includes, at least, a general finding that the important proceedings relating to the sale, to the transfer of title, and to the distribution of more than $37,000 were not adversary, * * *."

In Kilgour v. Crawford, *supra,* the court made the following observation which we deem significant as re-

gards this subject: "But where the defendants deem it necessary to employ counsel, in order to protect their interest, and secure a just partition, or an equitable assignment of dower, we can see no reason why they should be required not only to pay the fees of their own counsel, but also a part of the fees of adverse counsel."

The conclusion therefore is that this proceeding was adversary and that the court did not err in refusing to allow an attorneys' fee for plaintiffs' attorneys.

That portion of the decree of the district court refusing to allow an attorneys' fee for plaintiffs' attorneys is affirmed.

That part of the decree sustaining the objections to the report of the referee and partitioning the land is reversed and the cause in that connection is remanded with directions to the court to approve the report and proceed to carry into effect its purposes and the purposes of partition.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS.