[File No. 7263]

ALVIN STEVAHN, Appellant v. FERDINAND C. MEIDIN-
GER, Respondent.

(57 NW 2d 1)

324

Opinion filed October 14, 1952.   Rehearing denied Dec. 20, 1952

*John F. Lord,* and *Robert Chesrown,* for appellant.

*B. E. Kretschmar* and *Paul O. Kretschmar,* for respondent.

CHRISTIANSON, J. Plaintiff brought this action to recover the rental of certain lands in McIntosh County in this state for the farming season of 1947. The trial court held that the plaintiff was entitled to recover only one-twelfth of the rental of the land in question for the farming season of 1947. The plaintiff has appealed and contends that he is entitled to recover all of such rental and that the trial court erred in rendering judgment in his favor for only one-twelfth thereof.

In appellant's brief it is said: "This is an appeal from the judgment of the District Court, upon questions of law only, the issue on appeal being whether the District Court erred, as a matter of law, in limiting plaintiff's recovery to one-twelfth of the rental of the real estate for the 1947 season. . . . Ap-

pellant should have judgment for the full rental for 1947 as it was found by the District Court; $2021.81, and for his costs."

The respondent contends that the decision of the trial court is correct. In respondent's brief it is said that on the basis of the evidence and the law applicable thereto the judgment rendered by the trial court is proper and "the judgment of the lower court should be affirmed."

The evidence adduced upon the trial was not embodied in a settled statement of the case and we have no means of knowing what evidence was introduced. In these circumstances the facts found by the trial court must be accepted as true. Ryan v. Bremseth, 48 ND 710, 186 NW 818. The material facts in the case as so found are as follows: Andreas Stevahn, the father of the plaintiff, died intestate on April 9, 1941, possessed of certain real property in McIntosh County in this state. There survived him as his next of kin and heirs at law; his wife, Christina Stevahn, his daughters, Lydia Ketterling, Christine Bier, and Amanda Stevahn, and his sons, A. P. Stevahn, Ernest Stevahn, Arthur Stevahn, A. G. Stevahn and Alvin Stevahn, the plaintiff in this action. In due time proceedings for the administration of the estate of said Andreas Stevahn, deceased, were had in the County Court of McIntosh County in this state. Christina Stevahn, the surviving widow of said decedent, was duly appointed and qualified as administratrix of the estate of Andreas Stevahn, deceased, and letters of administration issued to her on May 26, 1941. At the time of the death of said decedent the real property involved in this action was encumbered by two mortgages each bearing date November 1, 1933. There was a first mortgage to the Federal Land Bank of St. Paul, Minnesota, and a second mortgage to the Land Bank Commissioner. On April 14, 1945, Christina Stevahn, the widow of the decedent, A. P. Stevahn, a son, and Lydia Ketterling, Amanda Stevahn and Christine Bier, daughters of said Andreas Stevahn, deceased, and Christ Bier, Jr., the husband of Christine Bier, for a good and valuable consideration conveyed to the Federal Farm Mortgage Corporation all the right, title and interest that each of them had in the real property in question. Default having been made in the terms and conditions of such first mortgage

action for the foreclosure of such mortgage was duly brought in the District Court of McIntosh County. In such action all the above mentioned next of kin and heirs of said Andreas Stevahn were named defendants. Such proceedings were had in such action that judgment of foreclosure was duly rendered and entered in said action on August 31, 1945. Thereafter special execution issued upon such judgment and the premises described in the said mortgage to the Federal Land Bank and in such judgment of foreclosure were duly sold to the Federal Land Bank of St. Paul, Minnesota, the plaintiff in such action on October 3, 1945, and sheriff's certificate of sale was duly issued to the said Federal Land Bank on that same day.

The laws of the State provide that property sold subject to redemption "may be redeemed by the judgment debtor or his successors in interest" in the manner provided by law, and that "the judgment debtor or redemptioner may redeem the property from the purchaser within one year after the sale." NDRC 1943, 28–2401, 28–2402.

No redemption was made within the period of one year as provided by NDRC 1943, 28–2402 or at all. The statutory time for redemption expired on October 3rd, 1946. At that time the right of redemption of all the above mentioned next of kin and heirs of said decedent had expired with the exception of the plaintiff in this action who was inducted into the military service of the United States on November 23, 1945, and continued in such service until he was honorably discharged therefrom on February 10, 1947. His right to redeem was extended under the provisions of the Soldiers' and Sailors' Civil Relief Act of 1940, as amended. 50 USCA Sec 525. On October 7, 1946, there was executed and delivered to the Federal Land Bank of St. Paul a sheriff's deed for the premises in question. Our statutes provide that:

"Such deed shall vest in the grantee all the right, title, and interest of the mortgagor in and to the property sold, at the time the mortgage was executed, or subsequently acquired by him, and shall be a bar to all claim, right, or equity of redemption in or to the property by the parties to such action, their heirs and personal representatives, and also against all persons

claiming under them, or any of them, subsequent to the commencement of the action in which such judgment was rendered." NDRC 1943, 32–1909.

On November 7, 1946, the Federal Land Bank sold the real property in question to the defendant Ferdinand C. Meidinger under a contract for deed. Under such contract the said defendant agreed to pay the Federal Land Bank of St. Paul for such premises the sum of $11,000.00 with a down payment of $6000.00 and the balance of the purchase price payable in annual installments of $500.00 each. The contract for deed provided that in case of inability to furnish marketable title the Federal Land Bank might refund all amounts paid thereunder and terminate the contract. The contract provided that the purchaser should be entitled to take possession of the premises on November 15, 1946. The purchaser paid to the Federal Land Bank the sum of $6000.00 as provided in the contract for deed and entered into possession of the premises in November, 1946, pursuant to the provisions of the contract. The defendant Meidinger produced a crop on said premises in 1947 and the rental for the premises for the farming season of 1947 based upon the crops harvested and sold according to the computations of the trial court amounted to $2021.81. The defendant Meidinger remained in possession of the premises until December 16, 1947, when he conveyed all right, title and interest in such premises to the Federal Land Bank by quitclaim deed, and the Federal Land Bank of St. Paul paid to the said defendant the sum of $6735.00, the total amount that had been paid by the defendant to said Federal Land Bank of St. Paul under said contract for deed.

The plaintiff Alvin Stevahn was inducted into the military service of the United States on November 23, 1945, and remained in such service until he was honorably discharged therefrom on February 10, 1947.

The Soldiers' and Sailors' Civil Relief Act of 1940 as amended by Congress on October 6, 1942, (50 USCA Sec 525) provided:

"The period of military service shall not be included in computing any period now or hereafter to be limited by any law, regulation or order . . . nor shall any part of such period which occurs after the date of enactment of the Soldiers' and

Sailors' Civil Relief Act Amendments of 1942 (Oct. 6, 1942) be included in computing any period now or hereafter provided by any law for the redemption of real property sold or forfeited to enforce any obligation, tax, or assessment."

It is stated in the findings of fact that in the negotiations with the Federal Land Bank of St. Paul for the purchase of the premises the defendant was informed and knew that the plaintiff "because of his being in the military service had an extended right of redemption upon his discharge therefrom." On December 5, 1947, the plaintiff tendered to the Federal Land Bank of St. Paul the sum of $11,505.15, the calculated amount necessary to effect redemption from said foreclosure sale. The Federal Land Bank accepted the amount tendered and on December 9, 1947, the said Bank made, executed, and delivered to the plaintiff a deed of conveyance of said premises.

The appellant contends that under the facts found by the trial court he was entitled to redeem, that he has effected a redemption and as a result became and is entitled to all the rental for the year 1947 measured by the market value for each fourth bushel of the grain produced, the customary rental in 1947 in that locality. In support of his contention he cites NDRC 1943, 28-2411, which provides:

"The debtor under an execution or foreclosure sale of his property shall be entitled to the possession, rents, use, and benefit of the property sold from the date of such sale until the expiration of the period of redemption."

He asserts that after the expiration of the period provided for redemption, on October 3, 1946, he alone occupied the position of a redemptioner, that the rights of the other heirs "to redeem had expired" and that "after October 3, 1946, they were no longer even cotenants and that possession belonged to him alone."

This contention is predicated upon an erroneous premise and ignores certain controlling facts.

All the real property owned by Andreas Stevahn at the time of his death descended immediately to his heirs subject to the control of the county court and to the possession of any administrator appointed by that court for the purposes of administra-

tion., NDRC 1943, 56–0103. In Thompson on Real Property it is said:

"The heirs of a deceased intestate occupy· the place of the ancestor as regards the taking of the interest in the ancestor's property, but they receive no better right to the property than the ancestor had. The title to lands, unless otherwise devised vests eo instante upon death in the heirs of the decedent; the right of the personal representative being limited to selling the land for debts." 5 Thompson on Real Property, Permanent ed., Sec 2418, p 135.

Under the laws of this state the surviving widow of Andreas Stevahn succeeded to a four-twelfths interest and estate in the land owned by him at the time of his death, and each of his three daughters and five sons succeeded to a one-twelfth interest and estate in such land. NDRC 1943, 56–0104.

The surviving widow and children of Andreas Stevahn became tenants in common. Johnson v. Brauch, 9 SD 116, 68 NW 173, 62 Am St Rep 857; Aberle v. Merkel, 70 ND 89, 291 NW 913; Hoffman v. Hoffman Heirs, 73 ND 637, 17 NW2d 903.

Corpus Juris says: "On the death of an owner of property intestate, the descent of the property by operation of law to the several heirs creates a tenancy in common." 62 CJ, Sec 15, p 416.

."Tenants in common hold by several and distinct titles, with unity of possession. No privity of estate exists between them," and as between themselves their interests are several, "there being no unity of title, each owner is considered solely and severally seized of his share." 62 CJ Sec 4, p 409.

"In accordance with the usual· rules of property, it is clear that a cotenant can deal with strangers as he will in so far as his own undivided moiety is concerned. He can sell, lease, mortgage, or pledge it as he can any other property that he may own." 14 Am Jur Sec 63, p 131.

"Any cotenant not under a disability can effectively convey his own moiety or any fractional proportion thereof, provided he complies with the usual rules governing transfers of property." 14 Am Jur Sec 85, p 150.

"A tenant in common is entitled to possession of the common

property as against all the world save his cotenants; and no one can complain of the exclusive use of the common property by one tenant in common except his cotenant." 62 CJ p 424.

"It is a rule of general application that any co-owner of real property has a right to enter upon the common estate and take possession of the whole thereof, subject only to the equal right of his companions in interest, with whose possession he may not interfere." 14 Am Jur Sec 23, pp 93–94.

"Each tenant in common is equally entitled to the use, benefit, and possession of the common property, and may exercise acts of ownership in regard thereto, and so may authorize a third person to do whatever he himself could have done, the limitation of his right being that he is bound so to exercise his rights in the property as not to interfere with the rights of his cotenant." 62 CJ p 421.

A corporation may become a cotenant and as such has the same rights as a natural person. 14 Am Jur Cotenancy, Sec 18, p 89.

Upon the death of Andreas Stevahn his surviving widow and children became the owners of all the land owned by him at the time of his death. A tenancy in common was created and each of them held a distinct and several title to his or her share and no privity of estate existed between them and each such co-owner was solely and severally seized of his share. 62 CJ pp 408–409. All the land was subject to a mortgage given to and owned by the Federal Land Bank of St. Paul and the ownership of each and all of the shares of the heirs of Andreas Stevahn was subject to such mortgage.

Upon the foreclosure of the mortgage held by the Federal Land Bank of St. Paul the heirs of Andreas Stevahn and the grantees of the heirs that had conveyed their interests were cotenants and each of the cotenants including the plaintiff had a right to enter upon the common estate subject to the equal rights of his companions in interest with whose possession he might not interfere. 14 Am Jur Cotenancy, Sec 23, pp 93–94. Each cotenant had the right of possession and to his proportionate share of the rental for the land until the expiration of the period of redemption. NDRC 1943, 28–2411. The appellant was

entitled to possession as a cotenant and to his share of the rental of the land as measured by his interest in the premises, but his cotenant or cotenants had equal rights and he had no right to interfere with their lawful possession or to any part of the proportionate share of the rental belonging to such cotenants. Any cotenant desiring to redeem must do so within a year after the sale. NDRC 1943, 32–1918, 28–2402. None of the cotenants redeemed and all right to redeem ceased on October 3, 1946, except as to the appellant Alvin Stevahn, and as to him the period of redemption had been extended until December 20, 1947, by the Soldiers' and Sailors' Civil Relief Act of 1940. 50 USCA Sec 525.

After the period allowed by the statute for redemption had expired sheriff's deed was issued to the Federal Land Bank of St. Paul which deed vested in such bank eleven-twelfths of all the right, title, interest and estate of said Andreas Stevahn in the land at the time the mortgage was executed and subsequently acquired by him and was "a bar to all claim, right or equity of redemption in or to the property" by all the heirs at law of said Andreas Stevahn (except Alvin Stevahn) and their personal representatives and against all persons claiming under them or any of them subsequent to the commencement of the action in which the judgment was rendered pursuant to which the premises were sold. NDRC 1943, 32–1909. After such deed was executed and delivered all the heirs of Andreas Stevahn (with the sole exception of the plaintiff Alvin Stevahn) had no more interest in the premises than they would have had in case each of them had voluntarily conveyed their respective shares in the premises to another for a consideration. Barker v. More Bros., 18 ND 82, 87, 118 NW 823, 825.

The result of the sale and the conveyance to the Federal Land Bank of St. Paul by the sheriff's deed was to vest the Federal Land Bank with fee simple title to eleven-twelfths interest in the premises, to discharge the indebtedness and lien of the mortgage and certificate of sale on the eleven-twelfths interest in the land so conveyed to the Federal Land Bank, and to reduce the amount of the indebtedness and lien of the mortgage and certificate of sale upon the remaining one-twelfth interest in the land

still owned by the appellant Alvin Stevahn to one-twelfth of the amount that would have been required to redeem the whole of the premises from the foreclosure sale if the whole of the premises had been subject to redemption. The appellant Alvin Stevahn still owned a one-twelfth interest in the land which interest was subject to the lien of the mortgage and certificate of foreclosure sale for the amount remaining due thereon after giving credit thereon for the amount which had been discharged by the conveyance to the Federal Land Bank of the eleven-twelfth interest in the land. From the time the sheriff's deed was executed and delivered to the Federal Land Bank on October 7, 1946, until December 9, 1947, when the Federal Land Bank sold and conveyed all its interest in the premises to the appellant Alvin Stevahn, he was the owner of a one-twelfth interest which was subject to the lien of the mortgage and the certificate of foreclosure sale, as Alvin Stevahn's right to redeem had been extended by the Soldiers' and Sailors' Civil Relief Act of 1940 until December 20, 1947. This was the only interest and estate in the premises that was subject to redemption. The interests in the land of all the heirs of Andreas Stevahn, other than the appellant, had been conveyed to and vested in the Federal Land Bank of St. Paul. The bank was the owner of eleven-twelfths interest in the premises and the appellant Stevahn continued to own a one-twelfth interest. That condition continued until in November 1946 when the Federal Land Bank sold the premises to the defendant Meidinger under a contract for deed which specifically authorized the defendant Meidinger to enter into possession of the premises on November 15, 1946. Under this contract for deed the Federal Land Bank continued to hold the legal title to the eleven-twelfths interest in the land in trust for Meidinger, the vendee in the contract, to the extent of his payments and he became the beneficial owner to the extent of the payments made by him. Woodward v. McCollum, 16 ND 42, 49–50, 111 NW 623, 626; Salzer Lbr. Co. v. Claflin, 16 ND 601, 605, 113 NW 1036, 1037; 55 Am Jur Vendor and Purchaser, Sections 355 and 356, pp 781–783.

The appellant was a successor in interest of Andreas Stevahn to the real property owned by him at the time of his death, but

he was not the only successor in interest. He succeeded to a one-twelfth interest only and his mother and brothers and sisters succeeded to the other eleven-twelfths interest. The heirs of Andreas Stevahn became tenants in common, and each of the cotenants had the right to the use, benefit and possession of the common property subject, however, to the equal rights of each of his companions in interest with whose rights he might not interfere. 14 Am Jur Cotenancy, Sec 23, pp 93–94; 62 CJ p 421. At all times from the death of Andreas Stevahn until the conveyance by the Federal Land Bank of St. Paul of all its right, title and interest in the premises to the appellant Stevahn on December 9, 1947, the appellant owned only a one-twelfth interest in the premises; and during all this time his cotenant and cotenants each had equal right to the possession and use of the premises.

The defendant Meidinger entered into possession of the premises under the contract for deed with the Federal Land Bank and planted, harvested and threshed a crop on the lands in question during the farming season of 1947. During all the time that the crop was planted, harvested, threshed and marketed the plaintiff owned a one-twelfth interest in the land and no more; the Federal Land Bank was the legal owner of eleven-twelfths interest therein and the defendant Meidinger under the contract for deed had the right to enter upon the land and plant, harvest, thresh and market the crop as was done. On December 9, 1947, the Federal Land Bank for a valuable consideration made, executed and delivered to the appellant Alvin Stevahn a deed of conveyance to the premises. As a result the tenancy in common was terminated (62 CJ Sec 18, p 418) and the appellant Alvin Stevahn became the owner of the entire tract in fee simple. Prior to the conveyance to him by the Federal Land Bank of St. Paul of all its interest, right and title in the eleven-twelfths interest in the land the appellant Stevahn owned only a one-twelfth interest in the premises.

Plaintiff's share in the rental for the land during the farming season of 1947 was proportionate to and measured by his interest in the land. In other words, plaintiff was not entitled to more than a one-twelfth share of such rental, and that is what

the trial court awarded to him. The judgment appealed from is affirmed.

MORRIS, C. J., and GRIMSON, SATHRE and BURKE, JJ., concur.

CHRISTIANSON, J. (On Petition for Rehearing). The plaintiff has petitioned for a rehearing. In the petition it is said that the Court erred in the following statements in the opinion:

1. "After the period allowed by the statute for. redemption had expired sheriff's deed was issued to the Federal Land Bank of St. Paul which deed vested in such bank eleven-twelfths of all the right, title, interest and estate of said Andreas Stevahn in the land at the time the mortgage was executed and subsequently acquired by him and was 'a bar to all claim, right or equity of redemption in or to the property' by all the heirs at law of said Andreas Stevahn (except Alvin Stevahn) and their personal representatives and against all persons claiming under them or any of them subsequent to the commencement of the action in which the judgment was rendered pursuant to which the premises were sold. NDRC 1943, 32–1909. After such deed was executed and delivered all the heirs of Andreas Stevahn (with the sole exception of the plaintiff Alvin Stevahn) had no more interest in the premises than they would have had in case each of them had voluntarily conveyed their respective shares in the premises to another for a consideration. Barker v. More Bros., 18 ND 82, 87, 118 NW 823, 825."

2. "The result of the sale and the conveyance to the Federal Land Bank of St. Paul by the sheriff's deed was to vest the Federal Land Bank with fee simple title to eleven-twelfths interest in the premises, to discharge the indebtedness and lien of the mortgage and certificate of sale on the eleven-twelfths interest in the land so conveyed to the Federal Land Bank, and to reduce the amount of the indebtedness and lien of the mortgage and certificate of sale upon the remaining one-twelfth interest in the land still owned by the appellant Alvin Stevahn to one-twelfth of the amount that would have been required to redeem the whole of the premises from the foreclosure sale if the whole of the premises had been subject to redemption."

3. "Plaintiff's share in the rental for the land during the farming season of 1947 was proportionate to and measured by his interest in the land. In other words, plaintiff was not entitled to more than a one-twelfth share of such rental, and that is what the trial court awarded to him."

1. It is said that the error in the first statement "consists in this, that the plaintiff in this action, Alvin Stevahn, had a valid and subsisting right of redemption, extended by a paramount statute of the United States, and necessarily recognized by the Courts of North Dakota, and by statute and decision in North Dakota, a mortgage upon real estate is only a lien for the payment of the debt and no title passes to the mortgagee by virtue of the mortgage, nor by virtue of the foreclosure sale, and the lien is extended to the end of the expiration of the period of redemption. For that reason as to any debtor having a valid right of redemption, which right is recognized by this honorable Court as existing in the plaintiff-appellant in this case, the Federal Land Bank of St. Paul and any of its successors could have no more than a lien, and could not have title."

2. It is said that the second statement "is contrary to the decision of this Court in Sailer v. Mercer County, 75 ND 123, 26 NW2d 137, and contrary to the express words of the Soldiers' and Sailors' Civil Relief Act of 1940 as amended October 6, 1942."

3. It is said that the third statement is "contrary to the express words of NDRC 1943, 28–2411: 'DEBTOR ENTITLED TO RIGHTS DURING REDEMPTION PERIOD. The debtor under an execution or foreclosure sale of his property shall be entitled to the possession, rents, use and benefit of the property sold from the date of such sale until the expiration of the period of redemption.' "

The contentions thus advanced are untenable.

As pointed out in the former opinion Andreas Stevahn the father of the plaintiff, died intestate on April 9, 1941, the owner and possessor of certain real property in McIntosh County in this state and left surviving him as his heirs at law his wife and three daughters and five sons. At the time of the death of said Andreas Stevahn the real property involved in this

action was encumbered by two mortgages, a first mortgage to the Federal Land Bank of St. Paul, Minnesota, and a second mortgage to the Land Bank Commissioner. On April 14, 1945, the widow, two of the sons and the three daughters conveyed all their interest, right and title in the real property in question to the Federal Farm Mortgage Corporation. Thereafter, default having been made in the terms and conditions of the first mortgage, action for the foreclosure of such mortgage was duly brought in the District Court of McIntosh County. In such action all the heirs at law of said Andreas Stevahn including Alvin Stevahn, the plaintiff in this action, and including also the Federal Farm Mortgage Corporation, were made defendants. Such proceedings were had in such action that judgment of foreclosure was duly rendered and entered on August 31, 1945. Thereafter special execution was duly issued upon such judgment and the premises described in said mortgage and in the judgment of foreclosure were duly sold to the Federal Land Bank of St. Paul on October 3, 1945, and sheriff's certificate of sale was duly issued to the said Federal Land Bank of St. Paul on that same day.

Under the laws of this state all the real property owned by Andreas Stevahn at the time of his death descended immediately to his heirs at law. NDRC 1943, 56–0103; Hoffman v. Hoffman's Heirs, 73 ND 637, 17 NW2d 903. The surviving widow succeeded to four-twelfths interest and estate in fee in the land owned by Andreas Stevahn at the time of his death, and each of the three daughters and each of the five sons succeeded to a one-twelfth interest and estate in fee in such land. NDRC 1943, 56–0104.

A cotenancy was created and the surviving widow and sons and daughters of Andreas Stevahn became tenants in common. 5 Thompson on Real Property, Permanent ed, Sec 2418, p 135; 62 CJ Sec 15, p 416.

"Tenants in common hold by several and distinct titles and estates, independent of each other, so as to render the freehold several also. They are separately seised, and there is no privity of estate between them. While their possession is per my, and

not per tout, each tenant, as to his share, is to be deemed the owner of an entire and separate estate." 14 Am Jur Sec 17, p 88.

"A cotenant can deal with strangers as he will in so far as his own undivided moiety is concerned. He can sell, lease, mortgage, or pledge it as he can any other property that he may own." 14 Am Jur, Sec 63, p 131. And in the absence of any prohibitory provisions in an instrument creating the relationship "one cotenant can purchase the share of another just as he would buy property from a stranger. He need not consult the other cotenants in connection with the transaction, since no champerty is involved, and the title acquired is in no sense antagonistic to their interests." 14 Am Jur, Sec 62, p 130.

"Any cotenant not under disability can effectively convey his own moiety or any fractional proportion thereof, provided he complies with the usual rules governing transfers of property." 14 Am Jur, Sec 85, p 150.

"The interests of tenants in common are several. Each tenant has the unquestionable right to alienate his interests or to make any disposition of such interests as he may choose, regardless of the wishes of the other tenants or joint owners." Garner et al v. Anderson, 67 Utah 553, 562, 248 Pac 496, 499.

"Where one person purchases or obtains by conveyance an undivided share of a tenant in common, he becomes a cotenant with the remaining owner or owners." 62 CJ p 414.

"Purchase at judicial sale of the interest of a tenant in common makes the purchaser a cotenant of those whose interests were not purchased." 62 CJ p 415.

"A judgment creditor, by acquiring title through a levy on an undivided interest becomes a tenant in common with his debtor's cotenants. As in the case of sales of undivided interests generally, sale on execution of an undivided portion of a larger tract creates a tenancy in common." 62 CJ p 416, Sec 13.

Since tenants in common hold by several and distinct titles and no privity of estate exists between them and as their interests are several and each owner is considered solely and severally seized of his share and since there is no relationship of

agency between the co-owners one cotenant cannot ordinarily dispose of the interest of another unless he is duly authorized so to do. 62 CJ Sec 4, p 409; 14 Am Jur, Sec 63, p 131. In the absence of authorization or ratification any attempted conveyance by one tenant of the common property or of any part in excess of his own interest is not binding upon the cotenants and operates to pass title to nothing more than the seller's own interest. 14 Am Jur, Sec 84, p 149. See, also, 62 CJ Sec 224, p 544.

It is a general principle that a cotenant is not permitted, without the consent of his cotenants, to buy an outstanding adversary title to or claim in the common property and assert the same for his own benefit or to the exclusion of his cotenants.

"Where a tenant in common purchases an outstanding title, it is presumed to have been done for the common benefit, and as a general rule purchase or extinguishment of an outstanding title, encumbrance, or claim by one tenant in common inures to the benefit of his cotenant, at their option." 62 CJ 456–458.

In such case the purchasing tenant will be regarded "as holding the title or claim so acquired for the benefit of his contenants upon seasonable contribution by them of their respective proportions of the necessary expenditures. A mortgage upon the property which is purchased by one of the cotenants does not merge with the fee but inures to the benefit of the other cotenants when they contribute their proportion of the purchase money." 14 Am Jur, Cotenancy, pp 120–121.

"A tenant in common who purchases or discharges an outstanding title or encumbrance for the benefit of the common estate is, in the absence of any agreement or understanding to the contrary, entitled in equity to contribution from his cotenants for the expense thereof in proportion to their respective shares and he has an equitable lien on such shares therefor. . . . The cotenants cannot be compelled to contribute except to the extent of their interest in the common property, and are not liable personally." 62 CJ pp 473–474.

In accordance with this general principle the rule is well settled that where property owned in common is sold at a judicial sale or pursuant to a power contained in a mortgage or

deed of trust for the purpose of satisfying an obligation which rests alike upon all the co-owners none of them can purchase the estate for his own sole benefit. If one of them buys it he does so subject to the rights of the others to contribute to the purchase price and participate in the benefits. 14 Am Jur, Sec 53, p 123. This principle is applicable where one of several co-owners of property acquires a tax title to the property or bids the same in at a judicial or foreclosure sale. 14 Am Jur, Sections 54 and 55, pp 123–126. In case a cotenant purchases an outstanding adverse title or claim to the common property, or pays a mortgage against the common property, or redeems the whole common property from the foreclosure of such mortgage, if the other cotenants "do not voluntarily contribute their respective shares of the cost within the reasonable time allowed by law, he can avail himself of the title thus acquired to compel them either to pay or to forfeit their interests in the property. In a proper case, he may have the amount that he has paid beyond his just proportion ascertained and declared to be a lien on their interests, and a decree directing such interests to be sold in satisfaction of the lien, or, if the claim purchased constitutes a lien upon the common estate, he may be subrogated to the rights of the transferrer." 14 Am Jur, Cotenancy, pp 129–130.

Under the above stated "general rule a redemption from a judicial or foreclosure sale of the common property by one tenant in common inures to the benefit of all of the cotenants, regardless of the intent of the redeeming tenant, and the non-redeeming cotenants may participate in the redemption by paying their proper proportions of the expenses at the proper time." 62 CJ Sec 92, p 465; Calkins v. Steinbach, 66 Calif 117, 4 Pac 1103.

Although a mortgagee cannot be compelled to accept payment of a part of the debt and release a corresponding interest in the land described in the mortgage unless he has expressly agreed to do so, as between the mortgagor or his successors in interest and the mortgagee, the mortgagee may accept payment of part of the debt and release a corresponding interest in the land without impairing his lien upon the remainder. 2 Jones on Mort-

gages, 8th ed, p 750; 59 CJS p 757; 36 Am Jur, Mortgages, Sec 475, p 924; 20 Am & Eng Ency of Law 1070; Woodward v. Brown, .119 Calif 283, 51 Pac 542, 63 Am St Rep 108; Hargrove v. O'Banion, 5 La App ·630; Exchange Bank of Perry v. Nichols, 196 Okla 283, 164 Pac2d 867. See, also, Jackson v. Pescia, 124 NYS 735.

So, likewise, if a mortgage has been foreclosed and the property purchased by mortgagee at foreclosure sale, although the mortgagor or his successor in interest is not as a general rule entitled to make a partial or proportionate redemption of the property sold the mortgagee may consent to such partial redemption. The mortgagee purchaser at the foreclosure sale and holder of the certificate of sale "may consent to the redemption by an owner of an· undivided interest in the property of such owner's interest without a redemption of the entire premises." 42 CJ Sec 2077, p 351. A partial release of an undivided interest in the property covered by the mortgage or a partial redemption from a foreclosure sale by an owner of an undivided interest in the property of such owner's interest discharges pro tanto the mortgagee's claim on the other portions of or interests in the property, as against the mortgagor and as against any person interested in any part of the remainder of the property. 2 Jones on Mortgages, 8th ed, p 753, Sec 1260. For by releasing a part of or interest in the property which is in equity primarily liable for the payment of the debt secured by the mortgage, the mortgagee is not permitted to charge the other portions of or interests in the premises with payment of the amount of the debt described in the mortgage or the amount of the debt as shown in the certificate of foreclosure sale, without deducting from the amount of the then mortgage debt or from the amount then required to be paid for a redemption of the entire premises the amount of the indebtedness for which the portion or interest released would have been liable if there had been no partial release or partial redemption. 2 Jones on Mortgages, 8th ed, p 753.

"Upon the same principle, after the mortgaged premises have passed to several devisees, if the mortgagee releases one devisee's portion the others are liable only for that share of the debt

for which their portion would be liable had no release been made." 2 Jones on Mortgages, 8th ed, Sec 1260, pp 753-754.

The matter of the redemption by an owner of an undivided interest in the property described in the mortgage of such owner's interest without redemption of the entire premises was considered by the Supreme Court of Nebraska in Dougherty et al. v. Kubat et al., 67 Neb 269, 93 NW 317. The opinion in that case was written by the distinguished jurist Roscoe Pound then serving as Commissioner of the Supreme Court of Nebraska. In the opinion it is said:

"A tenant in common, who . . . is entitled to redeem from a foreclosure sale, may not compel the mortgagee or his successors to accept a part of the debt, and relieve his interest only of the burden, but must offer to redeem the whole by discharging the entire incumbrance. 3 Pom Eq Jur Sec 1220; McQueen v. Whetstone, 127 Ala 417, 30 So 548; Buettel v. Harmount, 46 Minn 481, 49 NW 250; Lyon v. Robbins, 45 Conn 513; Crafts v. Crafts, 13 Gray (Mass) 360; Eiceman v. Finch, 79 Ind 571. Nevertheless as it is equitable to allow the plaintiff in an action for redemption to redeem his interest by paying his equitable proportion of the mortgage debt, the defendant may, if he sees fit, allow the plaintiff to do so. Kerse v. Miller, 169 Mass 44, 47 NE 504; Van Vronker v. Eastman, 7 Metc (Mass) 157; Gibson v. Crehore, 5 Pick 146. The rule that the debt is a unit, so that redemption of a partial interest only cannot be imposed upon the mortgagee, is solely for the benefit and advantage of the latter. He cannot be compelled to accept his money in driblets, and may insist upon payment of the entire mortgage debt. But if he so insists, and one tenant in common relieves the entire estate of the incumbrance, the benefit accrues to the other tenants in common, subject to a charge upon their several interests for their respective shares of the incumbrance paid off. 3 Pom Eq Jur Sec 1220. Hence it must be evident that the requirement that the whole incumbrance be discharged is merely an incident of the right of the tenant in common to relieve his individual share, arising from the fact that, with due regard to the equities of others, he can relieve it in no other way. If the difficulties arising from the rights of the mortgagee are obviated,

there is no reason why he should be permitted or required to redeem more than his interest. We think, therefore, that if the mortgagee or his successors choose to accept a portion of the debt, and allow redemption of a partial interest, and such course is equitable under the circumstances, the holder of such interest cannot insist upon redeeming the whole." 67 Neb 274–275, 93 NW at p 319.

"One tenant in common paying a general encumbrance upon the common estate, for which neither tenant is personally liable, has no claim for contribution against his cotenant. His only remedy is to pay the encumbrance, and then enforce that by foreclosure against his cotenant. He can not compel his cotenant to redeem his half of the land. The cotenant has his option whether he will redeem or let his interest go. No personal obligation rests upon him to redeem, or to pay any part of the mortgage debt. The mortgage is a burden upon the land, and its payment is not a personal duty; and, therefore, he may exercise his option whether he will save his interest by paying the debt, or let his interest be foreclosed." 9 Thompson on Real Property, Sec 5102, p 611; 2 Jones on Mortgages, 8th ed, Sec 1393, p 875.

Where a tenant in common pays a general encumbrance upon the common property for which none of the cotenants is personally liable, or makes a redemption of the entire property on a foreclosure of such general encumbrance the payment so made will not result in an expansion of the interest or ownership of such tenant in the common property. His interest will remain the same and he will discharge the lien or claim against his interest and will acquire an equitable lien upon the interests of his cotenants in proportion to their respective interests for the money paid by him in discharging the lien upon, or in effecting a redemption of, the whole of the common property. Dougherty et al v. Kubat et al, supra; Oliver v. Lansing et al, 57 Neb 352, 77 NW 802; Calkins v. Steinbach, supra; McLaughlin v. Estate of Curts, 27 Wis 644.

In Oliver v. Lansing et al, supra, the Supreme Court of Nebraska said:

"In Fisher v. Eslaman, 68 Ill 78, it is said: 'Where one tenant in common removes an incumbrance from the common estate, the other tenants must contribute to the extent of their respective interests, and to secure such contribution a court of equity will enforce upon such interests an equitable lien of the same character with that which has been removed by the redeeming tenant.' In Titsworth v. Stout, 49 Ill 78, it is said: 'The redeeming tenant in common, in order to secure contribution, is substituted to the same lien which he has redeemed.' Other cases to the same effect are Rankin v. Black, 1 Head (Tenn) 650; Gee v. Gee, 2 Sneed (Tenn) 395; Dowdy v. Blake, 50 Ark 205. *We have been referred by counsel to no case, and in the course of a pretty thorough investigation have found none, in which it is held that payments made by one co-tenant beyond his just proportion, to reduce incumbrances, results in an expansion of the interest or ownership of such tenant in the common property. On the contrary, the doctrine of all the authorities seems to be that his interest, in such case, remains the same, but that to the extent he has made payments beyond his share he stands in the shoes of the creditor to whom the payments have been made.*" 57 Neb at pp 358–359, 77 NW at p 804. Italics supplied.

The laws of this state provide: (1) that an action may be brought in the district court for the foreclosure of a mortgage upon real property, (2) for the judgment to be rendered in such action, and, (3) for the sale of the mortgaged property under the judgment of foreclosure. NDRC 1943, 32–1901, 32–1906. They further provide:

"Whenever any real property shall be sold under judgment of foreclosure pursuant to the provisions of this chapter, the officer or other person making the sale must give to the purchaser a certificate of sale as provided by section 28–2311, and at the expiration of the time for the redemption of such property, if the same is not redeemed, the person or officer making the sale, or his successor in office, or other officer appointed by the court, must make to the purchaser, his heirs, or assigns, or to any person who has acquired the title of such purchaser by redemption or otherwise, a deed or deeds of such property. *Such*

*deed shall vest in the grantee all the right, title, and interest of the mortgagor in and to the property sold, at the time the mortgage was executed, or subsequently acquired by him, and shall be a bar to all claim, right, or equity of redemption in or to the property by the parties to such action, their heirs and personal representatives, and also against all persons claiming under them, or any of them, subsequent to the commencement of the action in which such judgment was rendered."* Italics supplied. NDRC 1943, 32–1909.

"Upon a sale of real property, the purchaser is substituted for the judgment debtor and acquires all the right, title, interest, and claim of such debtor to such property, and when the estate is less than a leasehold of two years' unexpired term, the sale is absolute. In all other cases the real property is subject to redemption as provided in this title. The officer must give to the purchaser a certificate of sale, containing:

1. A particular description of the real property sold;

2. A statement of the price bid for each distinct lot or parcel;

3. A statement of the whole price paid; and

4. When subject to redemption, a statement to that effect.

Such certificate must be executed by the officer and acknowledged or proved as may be required by law for deeds of real property." NDRC 1943, 28–2311.

Section 28–2312, NDRC 1943, provides that the sheriff's certificate of sale must be recorded in the office of the register of deeds of the county wherein the property is situated within sixty days from the date of sale. Section 28–2313, NDRC 1943, provides that if the court upon the return of execution and after having carefully examined the proceedings of the officer shall be satisfied that the sale has been made in all respects in conformity to the provisions of law, "the court must make an order confirming the sale and directing the clerk to make an entry on the journal that the court is satisfied of the legality of such sale, *and an order that the officer make to the purchaser a deed of such real property, or interest therein, at the expiration of one year from the day of sale unless the same is redeemed."* (Italics supplied)

"All real property sold upon foreclosure of a mortgage by order, judgment, or decree of court may be redeemed at any time within one year after such sale as prescribed by chapter 24 of the title Judicial Procedure, Civil." NDRC 1943, 32–1918.

Chapter 24 of the title Judicial Procedure, Civil referred to in Section 32–1918, supra, provides:

28–2401. "Property sold subject to redemption, or any part sold separately, may be redeemed in the manner hereinafter provided, by the following persons or their successors in interest:

1. The judgment debtor, or his successors in interest. . ."

28–2406. ". . . If the debtor redeems, the effect of the sale is terminated and he is restored to his estate. Upon a redemption by the debtor, the person to whom the payment is made must execute and deliver to him a certificate of redemption acknowledged or proved before an officer authorized to take acknowledgements of conveyances of real property. Such certificate must be recorded in the office of the register of deeds of the county in which the property is situated and the register of deeds must note the record thereof in the margin of the record of the certificate of sale."

28–2411. "The debtor under an execution or foreclosure sale of his property shall be entitled to the possession, rents, use and benefit of the property sold from the date of such sale until the expiration of the period of redemption."

At the time of the death of Andreas Stevahn the mortgage which he had given to the Federal Land Bank of St. Paul was a first lien upon the tract of land described in the mortgage. Upon his death all the real property owned by him at the time of his death descended immediately to his heirs at law and they became tenants in common. The widow became the owner of an undivided four-twelfths interest and estate in the land and each of the three daughters and five sons succeeded to and became the owner of an undivided one-twelfth interest and estate in the land. NDRC 1943, 56–0104. Each of the heirs at law of Andreas Stevahn became the owner of a distinct undivided interest in the whole tract and the several heirs held their respective interests by several and distinct titles. No privity of estate existed

between them and as between themselves their interests were several. Each owner was considered solely and severally seized of his or her share. 62 CJ Sec 4, p 409, and could "sell, lease, mortgage or pledge it as he could any other property that he might own." 14 Am Jur Sec 63, p 131.

The undivided interest of each of the heirs at law belonged wholly to him or her individually. Thus, the plaintiff became a successor in interest of Andreas Stevahn and the owner of a one-twelfth interest in fee simple in the land. His interest belonged to him individually and the other heirs at law had no share or interest whatever in the interest which belonged to him. And, likewise, he had no share or interest in the undivided interest in fee to which each of the other heirs at law had succeeded.

Default was made in the conditions of the mortgage of the Federal Land Bank of St. Paul and such mortgage was duly foreclosed by action in the District Court of McIntosh County. In such action all the heirs at law of Andreas Stevahn were made defendants as was also the Federal Farm Mortgage Corporation, to whom the widow of Andreas Stevahn, one of his sons and his three daughters had conveyed their interests. There was no personal liability on the part of any of the heirs at law of Andreas Stevahn for the indebtedness secured by the mortgage or for any part thereof. Such proceedings were had in the action that judgment of foreclosure was duly rendered and entered on August 31, 1945, thereafter special execution was issued upon the judgment and the premises described in the mortgage and in the judgment of foreclosure were duly sold to the Federal Land Bank of St. Paul, the plaintiff in such action on October 3, 1945, and sheriff's certificate of sale was duly issued to the said Federal Land Bank of St. Paul on that same day. At the time of such foreclosure sale the Federal Farm Mortgage Corporation was the owner and holder of an eight-twelfths interest and estate in fee simple in the tract of land described in the mortgage and sold at such foreclosure sale, and the plaintiff Alvin Stevahn and the defendants Ernest Stevahn, A. G. Stevahn and Arthur Stevahn were each the owner and holder of a one-twelfth interest and estate in fee simple in such tract of land.

Upon the mortgage foreclosure sale the Federal Land Bank the purchaser at such sale was substituted for the successors in interest of the mortgagor and it acquired all their "right, title, interest and claim to such property." NDRC 1943, 28–2311.

The property was sold subject to redemption. NDRC 1943, 28–2401, 32–1918. As has been pointed out each of the cotenants was the owner of an undivided interest and estate in the property sold at the mortgage foreclosure sale and each of such cotenants had a right of redemption. With the consent of the Federal Land Bank, the purchaser at the foreclosure sale, any one of the cotenants might have redeemed only his own interest; and if the mortgagee purchaser did not consent to such partial redemption then the cotenant might have redeemed the whole property from the sale. A redemption of the whole property, as has been pointed out, would have inured to the benefit of all the cotenants and the redeeming cotenant would have paid and discharged the lien against his own interest and acquired a lien upon the interests of his cotenants for their proportionate share of the money expended for the redemption. He would not by such redemption have enlarged his interest in the common property. The right of redemption from a mortgage foreclosure sale is statutory and can be exercised only within the period of time and in the manner prescribed by the law. Rist v. Andersen, 70 SD 579, 19 NW2d 833, 161 ALR 197; Banking Corporation of Montana v. Hein, 52 Mont 238, 156 Pac 1085; Brown v. Timmons, 79 Mont 246, 256 Pac 176, 57 ALR 1122; 37 Am Jur, Mortgages, p 211, Sec 823; 9 Thompson on Real Property, Permanent ed, pp 585–586.

In Brown v. Timmons, supra, the Supreme Court of Montana said:

"The 'right of redemption' arises only after the sale of property on execution, exists for the period prescribed by law, and is not property in any sense, but rather a bare privilege of statutory origin to be exercised only by the persons named in the statute in the instances therein provided and within the time and upon the conditions prescribed."

No redemption was made and the statutory period for redemption expired on October 3, 1946. At that time the right of re-

demption of the Federal Farm Mortgage Corporation and of all the heirs at law of Andreas Stevahn, with the single exception of the plaintiff Alvin Stevahn, expired. The plaintiff Alvin Stevahn had been inducted into the military service of the United States on November 23, 1945, and continued in such service until he was honorably discharged therefrom on February 10, 1947. The period of time within which to exercise his right to redeem was extended under the provisions of the Soldiers' and Sailors' Civil Relief Act of 1940 as amended. 50 USCA Sec 525. Such act provided that the period of military service shall not be included in computing "any period now or hereafter provided by any law for the redemption of real property sold or forfeited to enforce any obligation, tax or assessment." This provision speaks for itself. It excludes the period of military service in computing the period allowed by law for redemption of real property sold at the foreclosure sale and thus gives the person engaged in military service the additional time in which to redeem. The benefit afforded by the statute is for persons engaged in military service only. The statute does not operate in favor of other persons who are not so engaged. The statute does not purport to create a right of redemption, it merely purports to extend the time within which the right of redemption as created and existing by law may be exercised. The statute does not purport to enlarge the interest or estate which a person in military service has in the property which may be redeemed. Tolmas v. Streiffer et al. (La App) 21 So2d 387. It merely grants him the additional time in which to make redemption.

In this case all steps and acts in the action to foreclose were duly and regularly taken and had. It is undisputed that judgment of foreclosure was duly rendered and the premises described in the mortgage and the judgment were duly sold pursuant to the judgment of foreclosure on October 3, 1945; that sheriff's certificate of sale was duly issued on that same day; that no redemption was made from the foreclosure sale, and that on October 7, 1946, sheriff's deed was duly issued to the Federal Land Bank of St. Paul, the purchaser at the sale. Under the law the court, upon the return of the execution and after carefully examining the proceedings of the officer on being sat-

isfied that the sale had been made in conformity with law, was required to "make an order confirming the sale . . . and an order, that the officer make to the purchaser a deed of such real property, or interest therein, at the expiration of one year from the day of sale unless the same is redeemed." NDRC 1943, 28–2312. The law further required that "whenever any real property shall be sold under judgment of foreclosure" the officer "making the sale must give to the purchaser a certificate of sale and at the expiration of the time for the redemption of such property if the same is not redeemed, the person or officer making the sale or his successor in office" must make to the purchaser, his heirs or assigns or to any person who has acquired the title of such purchaser by redemption or otherwise a deed or deeds of such property," and that "such deed shall vest in the grantee all the right, title, and interest of the mortgagor in and to the property sold, at the time the mortgage was executed, or subsequently acquired by him, and shall be a bar to all claim, right, or equity of redemption in or to the property by the parties to such action, their heirs and personal representatives, and also against all persons claiming under them, or any of them, subsequent to the commencement of the action in which such judgment was rendered." NDRC 1943, 32–1909. In this case the fee title to the property sold at the foreclosure sale belonged to several cotenants each of whom owned a specific undivided interest in the property. The mortgage foreclosed was an encumbrance upon the whole property, and all interests of the several cotenants were subject to the mortgage and the sheriff's deed obviously conveyed to the purchaser at the sale all interests of all the cotenants, with the single exception of Alvin Stevahn but as to him the period of time within which to redeem was extended by the Soldiers' and Sailors' Civil Relief Act of 1940 as amended, 50 USCA Sec 525, upon his being inducted into the military service of the United States on November 23, 1945.

In State ex rel. Forest Lake State Bank v. Herman, 36 ND 177, 161 NW 1017, this court had occasion to consider the status of the purchaser at a mortgage foreclosure sale, after the period of redemption from the sale had expired. The relator in that case obtained a judgment against the owner of the land and

sought to redeem from certain foreclosure and execution sales and the certificates issued upon such sales. The period of redemption had expired but no sheriff's deed had been issued upon any of the certificates. The relator attempted to redeem by paying the sheriff the amount necessary to satisfy and discharge all liens in favor of prior redemptioners, including those evidenced by such certificates of execution and foreclosure sales. The sheriff executed to the relator a certificate of redemption but refused to issue the deeds to the relator as a redemptioner owing to the refusal of the holders of certificates of execution and foreclosure sales "to receive the redemptioner's money and their claim of right to deed pursuant to the mortgage and execution sales." This court held that the relator had no right to redeem. In the opinion in the case this Court said:

"The petitioner claims its right to redeem by virtue of being a creditor having a lien by judgment, but under the conceded facts in this case more than a year had elapsed after the execution sale under the Mandan Mercantile Company judgment before any attempt was made on behalf of the relator to redeem from the prior mortgage-foreclosure sales. There having been no redemption from the execution sale by the judgment debtor or by any redemptioner within the period of a year as prescribed by sec 7754, the right to redeem from such sale was terminated; and any judgment creditor who did not avail himself of the right to redeem within this period lost the lien of his judgment as against the interest of the judgment debtor in the land sold. This interest passed completely to the purchaser at the execution sale, and the only thing that remained to be done was the ministerial act on the part of the sheriff of executing the formal instrument of transfer. After the failure to redeem from the execution sale for the period of a year, it is idle to say that the judgment creditor continued to have lien. There was no interest of the judgment debtor to which such lien could attach. . . . We conclude that the lien of the relator's judgment was extinguished when the equity of redemption was terminated, and that thereafter the relator was not a redemptioner. . . .

"Appellant argues at considerable length that the above conclusions are unwarranted in this case, because of the fact that

the sheriff's deed has not been given. The contention is that, since the sheriff's deed is required to transfer the title of the debtor, such title remains in him until the deed is executed and delivered in conformity with the statute. We think this argument entirely untenable for the reason that the legal title of the debtor is unavailing to him for any purpose after the period of redemption prescribed by the statute has elapsed. The law makes it the ministerial duty of the sheriff to execute the deed immediately upon the expiration of the period for redemption. This being true, the substantial rights of the debtor and of the various redemptioners must be judged as though this ministerial act had been performed. Liens do not inhere in mere naked legal titles, they attach to the substantial interests of the owners of property." 36 ND at pp 184–185.

In this case a foreclosure sale was duly and regularly held and certificate of sale issued to the purchaser at the sale as provided by law. None of the owners of any of the eleven-twelfths interests and estates in the premises made redemption. After the statutory period for redemption had expired sheriff's deed was issued pursuant to the provisions of the statute.

The several cotenants whose interests in the real property were sold at the mortgage foreclosure sale on October 3, 1945, held their respective interests in the common property by several and distinct titles, independent of each other. 14 Am Jur Sec 17, p 88. Each cotenant had the right to redeem from the sale but he was under no obligation to do so. The right to redeem was granted by statute and in order to make redemption any cotenant who desired to redeem must do so in the manner and within the time prescribed by law. The right of redemption of all cotenants (with the exception of the plaintiff Alvin Stevahn) expired one year after the date of the sale. Each cotenant whose interest had been sold at the foreclosure sale had "his option whether he will redeem or let his interest go." 9 Thompson on Real Property, Sec 5102, p 611; 2 Jones on Mortgages, 8th ed, Sec 1393, p 875. None of the cotenants whose period of redemption expired one year after the date of sale elected to redeem; they elected not to redeem but to let their interests go. Under the plain provisions of the statute the purchaser at the

foreclosure sale was entitled to a deed and that deed conveyed to such purchaser all the right, title and interest to the common property and constituted "a bar to all claim, right, or equity of redemption in or to the property by the parties" to the action for the foreclosure of the mortgage. NDRC 1943, 32–1909.

After such sheriff's deed had been executed and delivered to the Federal Land Bank of St. Paul, the purchaser at the foreclosure sale, the owners of the eleven-twelfths undivided interests in the premises "had no more interest in the premises" than they would have had if they had voluntarily conveyed their respective interests in the premises to another for a consideration. Barker v. More Bros., 18 ND 82, 87, 118 NW 823, 825. The lien of the mortgage upon such eleven-twelfths interest in the land so vested in the Federal Land Bank of St. Paul by the sheriff's deed was extinguished. 2 Jones on Mortgages, Sec 1048, p 508 et seq; 59 CJS Mortgages, Sec 437, p 672 et seq, Sections 438, 439, pp 676–677. The ownership of such eleven-twelfths interest free from the lien of the mortgage and the certificate of foreclosure became vested solely in the grantee in the sheriff's deed. There was no right to redeem based either on the ownership of the cotenants of the eleven-twelfths interest in the fee, 9 Thompson on Real Property, Permanent ed, p 585, or on the lien of the mortgage which had ceased to exist. State ex rel. Forest Lake State Bank v. Herman, supra. The mortgagee having become the owner of such eleven-twelfths interest and estate in fee in the premises and the lien being extinguished and merged in the fee title vested in the Federal Land Bank of St. Paul by the sheriff's deed operated to discharge pro tanto the claim of the mortgagee under its mortgage as against the owner or a party interested in any part of the one-twelfth undivided interest, the remainder of the common property. 2 Jones on Mortgages, 8th ed, Sec 1260, pp 753–754. The sheriff's deed conveyed to the Federal Land Bank of St. Paul eleven-twelfths interest and estate in fee simple in the premises covered by the mortgage, the mortgage lien of the bank upon the interest so conveyed ceased to exist and the remainder of the property subject to the mortgage was the one-twelfth interest owned by the plaintiff Alvin

Stevahn. In order to redeem such one-twelfth interest, Alvin Stevahn, the owner of such interest would be required to pay only the amount remaining after deducting from the whole debt as evidenced by the certificate of foreclosure eleven-twelfths of the amount of such debt. In short, in order to redeem the plaintiff would be required to pay only the proportionate amount of the indebtedness, based upon his interest, namely, a one-twelfth of the amount which would have been payable if there had been no reduction from the amount of the debt as evidenced by the certificate of sale.

It is contended that under the provisions of NDRC 1943, 28–2411 the plaintiff, Alvin Stevahn, was entitled to recover all the rental for the premises for the year 1947 and that it was error to hold that he was entitled to recover no more than a one-twelfth share of such rental. Such contention ignores controlling facts and the language of the section invoked. Section 28–2411 reads:

"The debtor under an execution or foreclosure sale of his property shall be entitled to the possession, rents, use, and benefit of the property sold from the date of such sale until the expiration of the period of redemption."

It will be noted that the section says that the debtor under an execution or foreclosure sale of *"his"* property shall be entitled to the possession, rents, use, and benefit of the property sold from the date of such sale until the expiration of the period of redemption. The property that was sold at the mortgage foreclosure sale involved herein was not owned solely by the plaintiff. The property was owned by several co-owners, each of whom owned an undivided interest in the property. The plaintiff was the owner of a one-twelfth undivided interest and estate in fee therein and no more. *"His property,"* i.e. the plaintiff's property, that was sold at such foreclosure sale was only an undivided one-twelfth interest and estate in fee in the whole property. The other eleven-twelfths undivided interests and estate in fee were owned by his cotenants and the plaintiff had no interest or share in the eleven-twelfths undivided interests owned by his cotenants. Such eleven-twelfths interests were

not property of the plaintiff. He had no interest and estate therein whatsoever. They were the property of his cotenants. Hence, plaintiff was obviously not entitled to all the rent for the whole property in which he owned only a one-twelfth undivided interest. He was entitled to the rent only on "his property" that was sold and the other cotenants were entitled to the rent on the remaining eleven-twelfths interests which they owned. In other words, plaintiff was entitled only to his proportionate share of the rental as measured by his interest in the property for which the rent was received. At the time of the foreclosure sale the plaintiff owned only a one-twelfth undivided interest in the land sold at said sale. That was the only interest and estate that he had therein at any time until in December 1947 (after the rental for 1947 had been earned) when he purchased the interest and estate of the Federal Land Bank of St. Paul which then owned the remaining eleven-twelfths interests and estate in fee and also had a mortgage lien upon the remaining undivided one-twelfth interest owned by the plaintiff. Under the conveyance which the plaintiff then received from the Federal Land Bank of St. Paul he became the owner of the whole property free from the lien of the mortgage. Such conveyance operated to convey to him all the interest, right, and title in fee then owned by the Federal Land Bank of St. Paul in the undivided eleven-twelfths interest and estate in the premises and it also operated to release and discharge the mortgage lien which the Federal Land Bank of St. Paul held upon the remaining one-twelfth interest in the premises then owned by the plaintiff.

We adhere to and repeat what we said in the concluding paragraph in the former opinion: "Plaintiff's share in the rental for the land during the farming season of 1947 was proportionate to and measured by his interest in the land. In other words, plaintiff was not entitled to more than a one-twelfth share of such rental, and that is what the trial court awarded to him."

A rehearing is denied.

Morris, C. J., and Sathre, Burke and Grimson, JJ., concur.